RICHARD A. SPRINGS et al., Appellants, *v.* THE HANOVER NATIONAL BANK OF THE CITY OF NEW YORK, Respondent.

Bills, notes and checks — mere attachment of a bill of lading to a draft does not make it a part of such draft — presumptions arising from the acceptance or payment of such draft — forged bill of lading attached to draft — when payee not chargeable with knowledge of the forgery.

1. The drawee of a draft who has paid the same to a *bona fide* holder for value relying in part upon purported bills of lading attached by the drawer to the draft, but not mentioned therein, cannot, on discovery that the bills of lading are forgeries, recover

back the moneys so paid from the payee or indorsee who has neither guaranteed the genuineness of said instruments nor been aware of their fraudulent character.

2. The mere attachment of bills of lading to a draft does not make the former a part of the latter; one who accepts or pays such a draft must be assumed in the absence of special circumstances to do so on the faith of the draft itself, and reliance upon the bills of lading is not a fact which enters into the substance of the real transaction in accepting or paying the draft, but is an extrinsic fact.

3. The plaintiffs, as drawees, paid the defendant, as indorsee from another bank, a draft for $39,000 drawn by a firm of cotton dealers in the south with forged bills of lading attached. There was nothing in the draft making reference to a bill of lading except the word "Cotton" lithographed in the body of the blank form. The forgeries were not obvious and were not disclosed to defendant until it had paid over the proceeds in the ordinary course of business to its indorsee. *Held*, that defendant became the owner and holder of the draft in the regular course of business for value and without notice of any fact or circumstance which made it chargeable with knowledge or of responsibility for the forgery of the bills of lading.

*Springs* v. *Hanover Nat. Bank*, 152 App. Div. 949, affirmed.

(Argued June 10, 1913; decided October 21, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 4, 1912, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

The plaintiffs are and for some time have been engaged as cotton commission merchants in the business of buying and selling cotton in New York, dealing mainly on the Cotton Exchange. The defendant at all times involved in this action has been a national bank, having its banking offices in said city, and the First National Bank of Decatur, Alabama, was a similar banking association having its banking office at said latter city, and Knight, Yancey & Co. was a firm of cotton dealers carrying on business as such at said last-named city and other places until it went into bankruptcy in April, 1910. Said

latter copartnership had done business with said First National Bank of Decatur for several years, procuring the discount of drafts with and without bills of lading attached for large sums of money, and also had done business with plaintiffs, mainly dealing in futures. Said copartnership at the time of the occurrences involved in this action was in good standing and credit, and, as contended, there was no evidence introduced or offered which tended to impeach such standing with either of the banks which have been mentioned.

On March 29, 1910, telegrams and a letter passed between said copartnership and plaintiffs, whereby in substance the latter authorized the former to draw upon them for $39,000 as against a shipment of 600 bales of cotton. In accordance with such arrangement on said date said firm presented to the Decatur bank its draft for $39,000 drawn on plaintiffs payable at sight with what purported to be bills of lading and certificates of insurance for 600 bales of cotton attached, and this draft was by said Decatur bank duly discounted and the proceeds thereof placed to the credit of said firm, who on the same day checked the same out.

On the same day the Decatur bank transferred said draft by unrestricted indorsement to the defendant and mailed it in a letter which stated that it was "for collection and credit." The draft thus inclosed reached the defendant shortly thereafter and was presented with the bills of lading attached in the usual manner to plaintiffs, who, after satisfactory examination, took it up and gave the defendant a check for its amount. The moneys thus received by defendant from plaintiffs were placed to the credit of the Decatur bank, and, as claimed by defendant, were withdrawn by the latter in the ordinary course of business April 4, 1910.

It subsequently transpired that the purported bills of lading were forgeries and did not represent any shipment of cotton. These forgeries, however, are not

claimed to have been of such a character as to be obvious, and neither the Decatur bank nor the defendant had any notice or knowledge that they were such until notice was received by the defendant from the plaintiffs on May 13, 1910, accompanied by a demand for repayment of the amount of said draft on the ground that the bills of lading were forgeries.

Except for the word "Cotton," lithographed in the body of the blank form of draft, there is nothing in the latter which is even claimed to make any reference to the bills of lading which were attached to it.   There is evidence from which it may be inferred that plaintiffs in taking up the draft from defendant were more or less influenced by the supposed security of said bills of lading.   There was also introduced and offered by plaintiffs some evidence claimed to permit the inference that the Decatur bank had other security from Knight, Yancey & Co., and that, relying on such security, it was too trustful in its dealings with said firm in such transactions as the one here involved, and did not sufficiently scrutinize the purported bills of lading.   There is, however, not even a suggestion which questions the good faith of the defendant if it be regarded, as plaintiffs elect to regard it, as the purchaser and owner of the draft in question instead of a collecting agent for the Decatur bank.

*John R. Abney* for appellants.   The Hanover National Bank and The First National Bank of Decatur, by receiving the draft attached to the bills of lading, knew that the attachment meant that the draft was drawn against the cotton mentioned in the bills of lading, and that the payment to be made was for the cotton.   (*Tallman* v. *Franklin*, 14 N. Y. 584.)   The attachment of the draft to the papers made them all one.   (*Bank of America* v. *Waydell*, 187 N. Y. 120.)   The Hanover National Bank, as owner, in presenting said papers all attached together, represented to the plaintiffs what was stated in the bills

of lading, to wit, that the railroads had received 600 bales of cotton marked " C A R," " P I T " and " B A T," that they had issued the bills of lading, that the signatures thereto were genuine, that the cotton was in transit, and that the draft thereto attached had been drawn against the cotton therein described; and said bank, as owner, in delivering said bills of lading to the plaintiffs, made a symbolical delivery of the cotton mentioned in the bills of lading; and, therefore, plaintiffs are entitled to recover. (*Ten Eyck* v. *Whitbeck,* 156 N. Y. 341; *Armour* v. *M. C. R. R. Co.,* 65 N. Y. 111; *Haas & Co.* v. *Citizens' Bank,* 144 Ala. 562; *Bank of Rochester* v. *Jones,* 4 N. Y. 497; *Commercial Bank* v. *Pfeiffer,* 108 N. Y. 242; *Hutchinson* v. *Johnson,* 33 Barb. 392.) The draft, being attached to the bills of lading and thus showing that it was drawn against cotton mentioned in the bills of lading, was a conditional draft; and the Hanover National Bank, which presented it and the bills of lading thereto attached and received the money for the forged bills of lading, promised and bound itself to repay the money to the plaintiffs in case the cotton did not arrive. (*Grotian* v. *Guaranty Trust Co.,* 114 Fed. Rep. 433; *Guaranty Trust Co.* v. *Grotian,* 186 U. S. 483; *Hannay* v. *Guaranty Trust Co.,* 187 Fed. Rep. 686; *Bank of Rochester* v. *Jones,* 4 N. Y. 497; *C. C. Bank* v. *Daniels,* 47 N. Y. 631; *Marine Bank* v. *Wright,* 48 N. Y. 3.) Plaintiffs believed that banks did not pay out their money in large amounts for bills of lading and drafts thereto attached without looking at the signatures on the bills of lading and knowing that they were genuine; and that it was in that way that banks did such business safely; and when plaintiffs took an indorsement and delivery of these bills of lading and the draft thereto attached from the defendant and paid it the sum of $39,000 therefor, they believed that the First National Bank of Decatur had looked at the signatures on the bills of lading and ascer-

tained that they were genuine and that the cotton was in transit; and on such belief and faith they paid over said money; whereas, the First National Bank of Decatur had not looked at the signatures on the bills of lading to ascertain that they were genuine, but had departed from the usual course of business in that regard, and plaintiffs thereby parted with their money upon a mistake of facts, and are, therefore, entitled to recover. (*Burr* v. *Veeder*, 3 Wend. 412; *Markle* v. *Hatfield*, 2 Johns. 455; *Heermance* v. *Vernoy*, 6 Johns. 5; *Herrick* v. *Whitney*, 15 Johns. 240; *Utica Bank* v. *Van Giesen*, 18 Johns. 485; *Wheadon* v. *Olds*, 20 Wend. 174; *Armour Packing Co.* v. *United States*, 153 Fed. Rep. 1; *Robinson* v. *Reynolds*, L. R. [2 Q. B.] 196; *Bank of Rochester* v. *Jones*, 4 N. Y. 497; *Thiedemann* v. *Goldschmidt*, 1 De Gex, F. & J. 4.)

*Charles F. Brown* and *Percy S. Dudley* for respondent. The plaintiffs have failed to prove that they paid the draft in question by reason of any mistake of fact which entitles them to recover from the defendant the money which they paid to it. (*Robinson* v. *Reynolds*, 2 Ad. & El. [N. S.] 196; *Thiedemann* v. *Goldschmidt*, 1 De G., F. & J. 4; *Woods* v. *Thiedmann*, 1 H. & C. 478; *Leather* v. *Simpson*, L. R. [11 Eq.] 398; *Hoffman* v. *Bank of Milwaukee*, 79 U. S. 181; *Goetz* v. *Bank of Kansas City*, 119 U. S. 551; *First Nat. Bank* v. *Burkham*, 32 Mich. 328; *Young* v. *Lehman*, 63 Ala. 519; *Craig* v. *Sibbett*, 15 Penn. St. 238; *Alton* v. *First Nat. Bank*, 157 Mass. 341.) As it appears by the uncontradicted evidence that the defendant, in presenting to the plaintiffs the draft drawn upon them by Knight, Yancey & Co., with the bills of lading and certificates of insurance attached thereto, acted as the representative and agent of the First National Bank of Decatur, which was a *bona fide* holder for value of said draft, bills of lading and certificates of insurance; that the defendant bank, in presenting said draft and in

receiving payment of the amount thereof, had no knowledge that the bills of lading attached thereto were spurious or that the signatures thereto were forged, or that said bills did not represent actual cotton delivered by Knight, Yancey & Co. to the railroad company; and that having received payment of said draft and having credited the amount thereof upon its books of account to the First National Bank of Decatur, it paid out the proceeds of said draft upon the checks or drafts drawn upon it by the First National Bank of Decatur before receiving any notice or having any knowledge that said bills of lading were spurious or that the signatures thereto were forged, the defendant is not liable to the plaintiffs in this action. (*Kingston Bank* v. *Eltinge*, 66 N. Y. 625; *Chapman* v. *Forbes*, 123 N. Y. 532; *Roberts* v. *Ely*, 113 N. Y. 128; *Nat. Park Bank* v. *Seaboard Bank*, 114 N. Y. 28; *Allen* v. *Culver*, 3 Den. 284; *Pond* v. *Harwood*, 139 N. Y. 125; *C. Nat. Bank* v. *Tradesmen's Nat. Bank*, 173 N. Y. 272; *N. C. Bank* v. *Westcott*, 118 N. Y. 468.) No recovery can be had in this case without proof by the plaintiffs that the First National Bank of Decatur, as well as the Hanover Bank, its agent for collection, was not a *bona fide* holder for value of the draft and, as the proof to the contrary is undisputed, the defendant was entitled to a judgment in its favor. Furthermore, if the defendant, by reason of the general indorsement of the draft by the Decatur Bank, is to be deemed to have been, at the time of its presentation to the plaintiffs, the owner thereof, it is entitled in this action to all the rights of a *bona fide* holder for value of such draft, and as such was entitled to a judgment in its favor. (*Cheever* v. *Pittsburgh, etc., R. R. Co.*, 150 N. Y. 59; *Lawyers' Title Co.* v. *Jones*, 113 App. Div. 105.)

HISCOCK, J. This case directly presents to this court for the first time the question whether the drawee of a draft who has paid the same to a *bona fide* holder for

value relying in part upon purported bills of lading attached by the drawer to the draft, but not mentioned therein, can, on discovery that the bills of lading are forgeries, recover back the moneys so paid from the payee or indorsee who has neither guaranteed the genuineness of said instruments nor been aware of their fraudulent character.

In this case the plaintiffs, who as such drawees paid the defendant as indorsee from another bank a draft for $39,000 drawn by a firm of cotton dealers in the south with forged bills of lading attached, urge four theories as justifying a recovery back. They say that defendant represented that the bills of lading were genuine and truthful both as to signatures and contents; that the draft contained such reference to the bills of lading as to make it conditional on the genuineness of the bills of lading; that plaintiffs relied on an examination of signatures by the bank and its transferor which had not in fact been made, and, therefore, the payment was made under a mistake of fact; that the defendant or its transferor departed from the usual course of business in discounting the draft, and thereby caused a mistake of fact, and that even if both parties were equally innocent the defendant must suffer.

These theories are not sustained. For instance, while it may be assumed that a draft like the present one may make such reference to bills of lading attached thereto as to make it conditioned on their genuineness and to permit a drawee who has paid the draft to recover back his moneys if the bills of lading prove to be forged, there is no evidence to bring this draft within that principle. Plaintiffs' entire argument at this point is built upon the fact that there was lithographed or printed in the blank form of draft used on this occasion the word " Cotton." This was evidently for some such general purpose as that of advertising or characterizing the business in which the drawers were engaged, and it cannot be seriously argued

that it had any such reference to the purported bills of lading which were attached to this particular draft as to imply that the latter was conditional or drawn against such purported shipments of cotton.

One of the other theories outlined is based on certain evidence introduced or offered from which plaintiffs contend that it may be inferred that the bank in Decatur, Alabama, from which defendant received the draft was not as careful in watching the drawers of the draft or in scrutinizing the bills of lading as it should have been and hence helped to bring about plaintiffs' misfortune. We think there was no evidence which showed legal fault upon the part of the Decatur bank in originally discounting the draft, and certainly there is no evidence which affects the defendant in that respect. The contention of the plaintiffs is that defendant became the owner and holder of the draft and was not a mere collecting agent for the Decatur bank. Accepting this theory there is no question that defendant became the owner and holder of the draft in the regular course of business for value and without notice of any fact or circumstance which made it chargeable with knowledge of, or responsibility for, the forgery of the bills of lading.

Therefore, in the end plaintiffs confront the general question as first stated.

While, as I have said, this question has not been directly decided by this court, it has been a subject of discussion and decision in many other courts.

In these cases the argument has been made on which plaintiffs in this case must finally rely, that a party accepting or discounting drafts accompanied by purported bills of lading upon the faith and security of which he more or less relies and which prove to be forgeries has acted under a material mistake of fact which entitles him to be relieved from his acceptance of payment. To this argument, however, the answer in substance has been made by the courts with almost unvarying uniformity, that

the mere attachment of bills of lading to a draft does not make the former a part of the latter; that one who accepts or pays such a draft must be assumed in the absence of special circumstances to do so on the faith of the draft itself and that reliance upon the bills of lading is not a fact which enters into the substance of the real transaction in accepting or paying the draft, but is an extrinsic fact; that if the rule were established that relief should be afforded against the acceptance or payment of a draft because of mistaken belief in the genuineness of attached bills of lading, such rule logically would apply to other cases, as that the drawee had entertained a mistaken notion as to the financial standing and responsibility of the drawers or as to the value of security for the draft, and thus lead to an instability and confusion in transactions involving negotiable paper which would be intolerable; that as between the innocent holder for value of a draft and the drawee who has accepted or paid the same in reliance upon forged bills of lading there is no reason why the drawee should be permitted to shift the burden of loss to the holder.

While, as stated, none of these decisions are by this court, and, therefore, controlling, nevertheless they have such weight and have so widely established a rule of negotiable paper that we should feel reluctant to disagree with them even if we doubted the wisdom of the principles upon which they are based. We do not, however, have any such difference with other courts in respect of the principles which are involved, and have no hesitation in adopting the rule which has been established by them.

It is impossible within reasonable length to review even the leading cases on this subject, and reference will be made to the opinions in only two or three of them.

*Hoffman & Co.* v. *Bank of Milwaukee* (79 U. S. [12 Wall.] 181) was an action brought by plaintiffs as drawees to recover the amount of three drafts paid by them

to the defendant on the ground that such moneys were paid under a mistake of fact. The fundamental and decisive fact on which they based their claim to recovery was that said drafts were accompanied by bills of lading on the faith of which they made payment supposing them to be genuine, when as a matter of fact they were forged. The defendant had discounted the drafts for value and was ignorant of the fraudulent character of the bills of lading. There was evidence as in this case of prior dealings between the drawers and drawees and of communications between them with reference to the drawing of the drafts in question.

The Supreme Court affirmed the action of the lower courts in directing judgment for the defendant, and in so doing wrote as follows (p. 189): "Money paid under a mistake of facts, it is said, may be recovered back as having been paid without consideration, but the decisive answer to that suggestion, as applied to the case before the court, is that money paid, as in this case, by the acceptor of a bill of exchange, to the payee of the same, or to a subsequent indorsee, in discharge of his legal obligation as such, is not a payment by mistake nor without consideration, unless it be shown that the instrument was fraudulent in its inception, or that the consideration was illegal, or that the facts and circumstances which impeach the transaction, as between the acceptor and the drawer, were known to the payee or subsequent indorsee at the time he became the holder of the instrument. \* \* \*

"Attempt is made in argument to show that the plaintiffs accepted the bills of exchange upon the faith and security of the bills of lading attached to the same at the time the bills of exchange were discounted by the defendants. Suppose it was so, which is not satisfactorily proved, still it is not perceived, that the concession, if made, would benefit the plaintiffs, as the bills of exchange are in the usual form and contain no reference whatever to the bills of lading, and it is not pretended that the

defendants had any knowledge or intimation that the bills of lading were not genuine, nor is it pretended that they made any representation upon the subject to induce the plaintiffs to contract any such liability. They received the bills of exchange in the usual course of their business as a bank of discount and paid the full amount of the net proceeds of the same to the drawers, and it is not even suggested that any act of the defendants, except the endorsement of the bills of exchange in the usual course of their business, operated to the prejudice of the plaintiffs or prevented them from making an earlier discovery of the true character of the transaction. On the contrary, it distinctly appears that the drawers of the bills of exchange were the regular correspondents of the plaintiffs, and that they became the acceptors of the bills of exchange at the request of the drawers of the same and upon their representations that the flour mentioned in the bills of lading had been shipped to their firm for sale under the arrangement before described. Beyond doubt the bills of lading gave some credit to the bills of exchange beyond what was created by the pecuniary standing of the parties to the same, but it is clear that they are not a part of those instruments, nor are they referred to either in the body of the bills or in the acceptance, and they cannot be regarded in any more favorable light for the plaintiffs than as collateral security accompanying the bills of exchange.    *    *    *

" Failure of consideration, as between the drawer and acceptor of a bill of exchange, is no defence to an action brought by the payee against the acceptor, if the acceptance was unconditional in its terms, and it appears that the plaintiff paid value for the bill, even though the acceptor was defrauded by the drawer, unless it be shown that the payee had knowledge of the fraudulent acts of the drawer before he paid such value and became the holder of the instrument.    *    *    *

" Forgery of the bills of lading would be a good defence

to an action on the bills if the defendants in this case had
been the drawers, but they were payees and holders for
value in the regular course of business, and the case
last referred to, which was decided in the Exchequer
Chamber, shows that such an acceptance binds the
acceptor conclusively as between them and every *bona
fide* holder for value."

*Goetz* v. *Bank of Kansas City* (119 U. S. 551) was an
action brought to recover on a bill of exchange with
forged bills of lading which had been discounted by the
bank and accepted without knowledge of the fraud in
either party. The contention of the defendant was that
he had accepted the draft in question in the belief that
the bills of lading were genuine, whereas they were
forged; that genuineness was asserted by the indorsement
of the bank on certain invoices accompanying them; that
the drawer bore such a reputation for dishonesty in the
community that the banks were guilty of culpable negli-
gence amounting to bad faith in discounting the drafts
on the faith of the bills of lading without inquiring as to
their genuineness.

The court in overruling these claims and holding the
acceptor liable, wrote as follows (p. 555): "A bank in
discounting commercial paper does not guarantee the
genuineness of a document attached to it as collateral
security. Bills of lading attached to drafts drawn, as in
the present case, are merely security for the payment of
the drafts.   *   *   *   The bank after discounting the
drafts, stood towards the acceptors in the position of an
original lender, and could not be affected in its claim by
the want of a consideration from the drawer for the
acceptance, or by the failure of such consideration." It
also interpreted the opinion in the *Hoffman* case as decid-
ing as follows: "Supposing the plaintiffs accepted the
bills of exchange upon the faith and security of the bills
of lading attached, that fact would not benefit them, as
the bills of exchange were in the usual form, and con-

tained no reference whatever to the bills of lading, and it was not pretended that the defendants had any knowledge or intimation that the bills of lading were not genuine, or that they had made any representation upon the subject to induce the plaintiffs to contract any such liability; that undoubtedly the bills of lading gave some credit to the bills of exchange beyond what was created by the pecuniary standing of the parties to them, but that they were not a part of those instruments, and could not be regarded in any more favorable light than as collateral security accompanying the bills of exchange; and that proof that the bills of lading were forgeries could not operate to discharge the liability of the plaintiffs, as acceptors, to pay the amounts to the payees or their endorsees, as the payees were innocent holders, having paid value for the same in the usual course of business."

In *First National Bank of Detroit* v. *Burkham* (32 Mich. 328) the court discussed a situation where the drawees sought to recover from the payees the amount of a draft which they had paid, and the genuineness of which was not disputed, upon the ground that the security for the bill was fictitious when they supposed it to be genuine and that, therefore, they had made payment under a mistake of fact. Judge COOLEY, writing in behalf of the court, said: "Admitting this to be so, how does the fact concern the payees? Do they assume to guarantee the fairness of the dealings of the drawers with the drawees, or the adequacy of any securities upon which the dealings are based? Not, certainly, in ordinary cases. The law merchant gives the payees the right to assume that any draft they receive and forward, if it is accepted and paid, is a draft which, from the state of the dealings between the drawers and the drawees, it is right and proper that the latter should pay as the principal party; and the presumption of law that such is the case is their complete protection if they received the bill in the ordinary course of business and for value.

" What is peculiar in the present case is, that the security which was sent forward with the bill proved to be fictitious. It is said that the drawees relied upon this security, and would not have paid the bill but for a belief that it was valid. It is in this that the mistake consists on which they rely for a recovery.

" If a mistake regarding their security will authorize the drawees to recall the payment made to the payee, no reason is perceived why a mistake regarding the responsibility of the drawer, or regarding his honesty or integrity, or anything else upon which they relied for protection in their dealings, should not justify the like action. If they suppose the drawer to be responsible when he is not, is not this as genuine a mistake of fact on their part as if they suppose a security to be good when it is fictitious. * * *

" But we think it would be an exceedingly unsafe doctrine in commercial law, that one who had discounted a bill in good faith, and received in its payment the strongest possible assurance that it was drawn with proper authority, should afterwards hold the moneys subject to such a showing as the drawee might be able to make as to the influences operating upon his mind to induce him to make payment. * * *

" The best view that can be taken of this case for the plaintiffs below is, that there was a mutual mistake of fact under which the bank discounted and the drawees paid the bill.. Conceding this, why should the drawees be allowed to transfer the loss to the bank ? "

The principles affirmed by these decisions are supported directly or indirectly by the following cases: *Robinson* v. *Reynolds* (2 Q. B. [Adolphus & Ellis N. S.] 196); *Thiedemann* v. *Goldschmidt* (1 DeGex, F. & J. 4); *Leather* v. *Simpson* (L. R. [11 Eq.] 398); *Young* v. *Lehman* (63 Ala. 519); *Craig* v. *Sibbett* (15 Pa. St. 238); *Alton* v. *First Nat. Bank of Webster* (157 Mass. 341); *Southwick* v. *First Nat. Bank of Memphis* (84 N. Y.

420); *Guaranty Trust Co.* v. *Grotrian* (114 Fed. Repr. 433); *Hannay* v. *Guaranty Trust Co.* (187 Fed. Repr. 686); 2 Daniels Negotiable Instruments [§ 1734D]).

It would likewise be impossible within reasonable limits to review the many cases cited by the learned counsel for the plaintiffs as authority for his contention that they are entitled to recover. Most of them are clearly distinguishable from and not at all contradictory of the cases which have been cited in support of the conclusions reached by us.

It is true that two or three decisions were made by an inferior court of Texas and by the courts of North Carolina, Mississippi and Alabama, which are at variance with those cases and which do tend to support the plaintiffs' position. These decisions, however, were reversed or so qualified by the courts of the same states respectively that they are not entitled to serious consideration.

We, therefore, hold that the judgment appealed from should be affirmed, with costs, upon the grounds stated and find it unnecessary to discuss the arguments which have been addressed to us on other points.

CULLEN, Ch. J., GRAY, WERNER, COLLIN, CUDDEBACK and MILLER, JJ., concur.

Judgment affirmed.