HUBBARD BROS. & CO. et al. v. SOUTHERN PAC. CO. et al.

SOUTHERN PAC. CO. v. LIQUIDATORS OF OUACHITA NAT. BANK et al.

(Circuit Court of Appeals, Fifth Circuit. March 10, 1919.)

No. 3283.

1. CARRIERS ⬤⟹94(4)—CONVERSION BY CARRIER—DAMAGES—INTEREST.

In an action against a railroad for conversion of cotton, in that the railroad delivered the cotton on a forged bill of lading, interest should be allowed the plaintiff only from judicial demand, and not from date of delivery of the cotton on the forged bill of lading; the conversion not being willful.

2. CARRIERS ⬤⟹57—CONVERSION BY CARRIER—DAMAGES—ASSIGNEE OF BILL OF LADING.

Where a railroad converted a shipment of cotton by delivering it on a forged bill of lading, a bank holding the true bill of lading as collateral

may recover from the railroad the entire value of the cotton, with interest.

3. CARRIERS ⬟⟿58—ASSIGNMENT OF BILL OF LADING—DELIVERY ON SHIPPER'S FORGED BILL OF LADING—RIGHTS OF BUYER.

Where a cotton dealer sold cotton and drew on the buyer, placing the true bills of lading as collateral with a bank, and sending to the purchaser a forged bill of lading, which the latter presented, obtaining the cotton, the buyer should be considered an equitable assignee of the seller and is entitled, on recovery by bank of judgment against the railroad for conversion, to any balance after payment of secured debt.

4. BILLS AND NOTES ⬟⟿434—SIGNATURES—NOTICE OF GENUINENESS.

Ordinarily the drawee of a bill of exchange must determine at his peril the genuineness of the signature of the drawer, and, if the ostensible maker of a forged note pays the note, he cannot recover the amount.

5. CARRIERS ⬟⟿71—CONNECTING CARRIERS—SURRENDER OF GOODS ON FORGED BILL OF LADING—REMEDIES OF CARRIER.

A common carrier can recover against one who receives goods upon a forged bill of lading purporting to have been issued by an agent of another carrier; the law fixing liability resulting from such a bill of lading not undertaking to make each of the agents of all the lines an agent of all of the connecting lines.

6. CARRIERS ⬟⟿71—CONNECTING CARRIERS—SURRENDER OF SHIPMENT ON FORGED BILL OF LADING—LIABILITY.

The mere fact that a railroad had previously delivered cotton to a buyer on forged bills of lading does not prevent the railroad from recovering from such buyer the value of the cotton delivered on a forged bill of lading purporting to have been issued by a connecting carrier, on the ground that the buyer was misled by the negligence of the railroad.

7. CARRIERS ⬟⟿56—INDORSEMENT OF DRAFT—EFFECT AS TO BILL OF LADING ATTACHED.

The indorsement of an ordinary draft for collection does not make the indorser a guarantor to the drawee of the genuineness of bills of lading attached, nor of the quantity or quality of the commodity ·shipped.

8. ASSIGNMENTS ⬟⟿50(1)—DRAFT ON PARTICULAR FUND—OPERATION.

Assuming that the mere insertion of the words "against 214 B/C" in the body of a draft could render it a conditional order on a particular fund, such could not be the case where, for a considerable time prior to the transaction, there was a running account between the drawer and the drawee, and at the date of the draft the drawer had a credit with the drawee, and no accounts were kept of particular shipments of cotton, the drawer having established a credit with his cotton business as a basis, and the drawee was reimbursed by and made a profit out of the cotton.

9. CARRIERS ⬟⟿55—DRAFT AND BILL OF LADING—NEGOTIABILITY.

The insertion of the figures and letters "against 214 B/C" in the face of a draft, to which was attached a bill of lading for 214 bales of cotton, did not destroy its characteristics as a negotiable instrument in Louisiana or· New York where the Uniform Negotiable Instruments Law was in force, being merely indicative of a particular fund out of which reimbursement was to be made.

Appeals from the District Court of the United States for the Western District of Louisiana; George W. Jack, Judge.

Suit by Hubbard Bros. & Co. and others against the Southern Pacific Company and the Liquidators of the Ouachita National Bank and Monroe National Bank. The liquidators of the Ouachita National Bank and the Southern Pacific Company file cross-bills. From a judgment in favor of the liquidators of the Ouachita National Bank against the Southern Pacific Company, and in favor of the Southern

⬟⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Pacific Company against plaintiff, the Southern Pacific Company and the plaintiff appeal. Modified and affirmed.

Hughes, Rounds, Schurman & Dwight, of New York City, and Howe, Fenner, Spencer & Cocke, of New Orleans, La. (Charles Payne Fenner, of New Orleans, La., on the brief), for appellants Hubbard Bros. & Co. and others.

George Denegre, Victor Leovy, and Henry H. Chaffe, all of New Orleans, La., for appellant Southern Pac. Co.

Farrar, Goldberg & Dufour, of New Orleans, La., and Hudson, Potts, Bernstein & Sholars, of Monroe, La. (Abraham Goldberg, of New Orleans, La., and Henry Bernstein, of Monroe, La., on the brief), for appellees liquidators of the Ouachita National· Bank and others.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

BATTS, Circuit Judge. H. L. Bandy, in 1904 and prior thereto, was engaged at Monroe, La., in buying and selling cotton. On August 15, 1904, Bandy discounted at the Monroe National Bank a draft for $9,000, drawn by him on Hubbard Bros. & Co., of New York. The body of the draft was in this form:

"Pay to the order of T. E. Flourney, cashier, nine thousand dollars, value received, and charge the same to account of against 214 B/C."

To the draft were attached, indorsed in blank, documents, afterwards ascertained to be forgeries, in the form of bills of lading for 214 bales of cotton, issued to Bandy by the Vicksburg, Shreveport & Pacific Railway Company, at Monroe, for shipment to New York via issuing company and Southern Pacific Railroad and steamship lines, consigned "to shipper's order, notify Hubbard Bros.," purporting to be signed by W. G. Wallace, then the agent of issuing company at Monroe. The draft was paid upon presentation.

In September Bandy purchased at New Orleans 214 bales of cotton, which, under his instructions, were shipped, via the Southern Pacific Company steamship line, from New Orleans to New York; a bill of lading being issued "to shipper's order, notify Hubbard Bros.," the cotton having the same identifying marks as in the forged bills of lading for 214 bales. To cover the purchase price of the cotton, the seller drew a draft on Bandy, through the Ouachita National Bank, attaching bills of lading covering the 214 bales of cotton. Bandy gave his check on the bank for the amount; the check being charged to him, and the bills of lading being retained as security. The Southern Pacific Company, upon surrender of the forged bills of lading, delivered to Hubbard Bros. & Co., the 214 bales of cotton shipped from New Orleans.

About August 29, 1904, Bandy forwarded to Hubbard Bros. by registered mail, indorsed in blank, another forged bill of lading of the same character as the other forged instruments, for 100 bales of cotton. Bandy wrote Hubbard Bros. & Co. that he would draw against this bill of lading when he arranged for the shipment of other cotton.

On August 31, 1904, Bandy discounted with the Ouachita National Bank a draft upon Hubbard Bros. & Co. for $19,700; the draft being in the ordinary form. To the draft were attached bills of lading, covering 301 bales of cotton. This cotton is not involved in this suit. The draft, however, was for a larger sum than would be covered by the 301 bales, and was drawn, also, with reference to the forged bills of lading for 100 bales hereinbefore mentioned. In October, Bandy purchased in New Orleans 100 bales of cotton, which were shipped, via the Southern Pacific Company, to New York; a bill of lading "to shipper's order, notify Hubbard Bros. & Co.," being issued, the cotton being identified by the same marks as were on the forged instrument forwarded Hubbard Bros. & Co. on August 29th. To cover the price of this 100 bales of cotton shipped to New York, the seller drew a draft on Bandy, and attached thereto the bill of lading for the cotton. Bandy gave his check on the Ouachita Bank for the amount, which was charged to him; the bill of lading being retained as collateral security. On October 25th this 100 bales of cotton was delivered by the Southern Pacific Company to Hubbard Bros. upon surrender of the forged bill of lading for 100 bales.

Hubbard Bros. & Co. instituted in the Western district of Louisiana a suit against the Southern Pacific Company, and the two national banks involved, setting up the facts stated, together with other facts to be referred to, and sought an adjudication of the rights of all parties. The several claims may be thus stated:

(1) The Ouachita National Bank, through its liquidators, asked for a judgment against the Southern Pacific Company for the value of the 314 bales of cotton for which it held bills of lading, with interest from the date of its delivery to Hubbard Bros. & Co.

(2) The Southern Pacific Company sought judgment against Hubbard Bros. & Co. for the value of all of the cotton delivered to them on the forged bills of lading. Hubbard Bros. & Co. denied their liability for the cotton so delivered.

(3) Hubbard Bros. & Co. also claimed that, in the event they were to be held liable to the Southern Pacific Company, they should have a judgment against the Monroe National Bank for the amount of the draft for $9,000 which they paid to that bank, with interest.

Judgment was rendered: In favor of the liquidators of the Ouachita National Bank against the Southern Pacific Company for $17,232.-42, with interest at 5 per cent. from the respective dates of delivery of the cotton to Hubbard Bros. & Co. until paid; and in favor of the Southern Pacific Company against Hubbard Bros. & Co. for the same amount, with like interest; and against Hubbard Bros. & Co. on their claim against the Monroe National Bank.

[1] The judgment of the Ouachita National Bank against the Southern Pacific Company is not attacked, except that it is contended that interest should be from judicial demand, instead of from the date of the delivery of the cotton by the Southern Pacific Company to Hubbard Bros. & Co. That which the Ouachita National Bank is entitled to recover is its damages; and if interest be calculated from the date the cotton was delivered to Hubbard Bros. & Co., it would

be benefited by the conversion. In November, 1904, the bank made demand on the Southern Pacific Company for the cotton. This date, rather than the date of the legal conversion, or the date of judicial demand, would appear to be the proper date for the interest to begin. By adopting this date, the bank will be made whole. While the Southern Pacific Company, in legal contemplation, converted the cotton when it was delivered to Hubbard Bros. & Co., the circumstance that the conversion was not willful makes a difference the law seems to recognize. 38 Cyc. 2101.

[2, 3] The amount which the Southern Pacific Company must pay to the Ouachita Bank is the measure of the liability of Hubbard Bros. & Co. to the Southern Pacific Company. The Ouachita Bank, holding the bills of lading as collateral, may recover the entire value of the cotton, with interest. Hubbard Bros. & Co., as equitable assignee of Bandy, would be entitled to any balance after the payment of the secured debt; but it appears that the debt, with interest, exceeds the recovery.

Hubbard Bros. & Co. contend that, notwithstanding the cotton was delivered to them on forged bills of lading, the Southern Pacific Company should not recover. Propositions are made: (1) That a concern issuing a bill of lading must be held to know its own signature, and must take the consequences of a mistake; (2) that the prior course of business, by which several shipments of cotton were delivered to Hubbard Bros. & Co. on forged bills of lading, constitutes negligence upon the part of the Southern Pacific Company, estopping them from recovery; (3) that the Southern Pacific Company is estopped by the delay in presenting the claim against Hubbard Bros. & Co.

[4, 5] 1. It is contended that the same rules should be applied to bills of lading as to bills of exchange: Ordinarily the drawee of a bill of exchange must determine at his peril the genuineness of the signature of the drawer. If the ostensible maker of a forged note pays the note, he cannot recover the amount. United States v. Bank of Georgia, 10 Wheat. 333, 6 L. Ed. 334; Gloucester Bank v. Salem Bank, 17 Mass. 33; Cook v. United States, 91 U. S. 389, 23 L. Ed. 237. The reasoning by analogy cannot be made to control, in the face of definite decisions holding that a common carrier can recover against a person who receives goods upon a forged bill of lading. Among the cases may be cited N. Y. Central Railroad v. Bank of Holly Springs, 195 Fed. 456, 115 C. C. A. 358; L. & N. R. R. Co. v. McKay & Morgan, 133 Tenn. 503, 182 S. W. 585. The reasoning to which appellant appeals, based on the suggestion that a corporation is better able to know its signature than any one dealing with it, cannot be made to apply to the bills of lading in question. The forged bills of lading appear on their face to have been issued by an agent of the Vicksburg & Shreveport Railroad Company. Under the law this agent had a right to give a bill of lading binding upon its direct and its mediate connections. To bind a connecting carrier, it is not necessary that the agent of the issuing company should be an agent of the connecting company. The law fixes the liability resulting from

such a bill of lading, but does not undertake to make each of the agents of all of the lines an agent of all of the connecting lines. It is quite impossible for a carrier to be familiar with the signatures of all of the agents of all of the carriers in the United States. Any rule, based upon an assumed ability of the company charged with the responsibility to know a signature better than an individual asserting a claim against it, must be held without merit, when the circumstances negative the possibility of such knowledge.

[6] 2. The evidence discloses that, in addition to the bills of lading for 214 bales of cotton, and the bill of lading for 100 bales of cotton, hereinbefore mentioned, forged bills of lading for some hundreds of other bales had been presented by Hubbard Bros. & Co. to the Southern Pacific Company, and cotton delivered on them. It appears, also, that genuine bills of lading were, as to all of this cotton, issued by the Southern Pacific Company or a connecting line, but that these genuine bills have never been presented. These facts suggest the possibility of looseness in the conduct of the business of the Southern Pacific Company, and in that of Hubbard Bros. & Co.; but they do not indicate that Hubbard Bros. & Co. have suffered, or have been misled, by the negligence of the Southern Pacific Company. The fact that Hubbard Bros. & Co. have received several hundred bales of cotton upon forged bills of lading, and have never been made to account for the cotton thus received, is hardly a sufficient basis for demanding that all subsequent forged bills of lading should have the effect of genuine bills.

3. Discovery of the forgery and institution of suit were within a reasonable time, and there is nothing to indicate that Hubbard Bros. & Co. were damaged by delay.

## The Claim against Monroe Bank.

[7] The claim of Hubbard Bros. & Co. against the Monroe National Bank is based upon the propositions: (1) That the draft, as drawn, is not a negotiable instrument; (2) that the figures and letters "214 B/C," in the body of the draft, make the attached forged bills of lading for 214 bales of cotton parts of the draft; (3) that the indorsement of the draft by the Monroe Bank made the bank a guarantor in every respect, except as to the signature of the drawer. The indorsement of an ordinary draft for collection does not make the indorser a guarantor to the drawee of the genuineness of the bills of lading attached, nor of the quantity or quality of the commodity shipped.

[8, 9] Whatever question may have existed with reference to the rule, recent decisions have placed the matter beyond doubt. In Springs v. Hanover National Bank, 209 N. Y. 224, 103 N. E. 156, 52 L. R. A. (N. S.) 241, the cases are reviewed and this conclusion reached. The opinion refers to the fact that there are decisions in Texas, North Carolina, Mississippi, and Alabama to the contrary. The decisions in conflict in at least three of the states have been overruled. Blaisdell v. Bank, 96 Tex. 629, 75 S. W. 292, 62 L. R. A. 968, 97 Am. St. Rep. 944; Mason v. Nelson, 148 N. C. 492, 62 S. E. 625, 18 L. R.

A. (N. S.) 1221, 128 Am. St. Rep. 635; Cosmos Cotton Co. v. Bank, 171 Ala. 394, 54 South. 621, 32 L. R. A. (N. S.) 1173, Ann. Cas. 1913B, 42. There being no question of good faith on the part of the Monroe Bank involved, the authorities cited leave for determination only whether the insertion of the figures and letters "214 B/C" in the face of the draft destroys its characteristics as a negotiable instrument, with resulting liability on the part of the bank as for money received from the drawee under a mistake of fact.

At the time of the transaction, the Uniform Negotiable Instruments Law was in force both in New York and Louisiana. Therein a bill of exchange is defined:

"A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed and determinable future time, a sum certain of money to order or to bearer." Consol. Laws N. Y. c. 38, § 210; Acts La. 1904, No. 64, § 126.

The act further provides:

"An unqualified order or promise to pay is unconditional within the meaning of this chapter, though coupled with: (1) An indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount; or (2) a statement of the transaction which gives rise to the instrument. But an order or promise to pay out of a particular fund is not unconditional." Consol. Laws N. Y. c. 38, § 22; Laws La. 1904, No. 64, § 3.

Appellants agree that, under the English cases, the draft in question would be held a negotiable instrument. See Guaranty Trust Co. v. Hannay, 210 Fed. 810, 127 C. C. A. 360. But they insist that the law as developed in the United States is different. Appellants cite Hoffman v. Bank, 12 Wall. 181, 20 L. Ed. 366; Goetz v. Bank, 119 U. S. 551, 7 Sup. Ct. 318, 30 L. Ed. 515; Varney v. Bank, 119 La. 943, 44 South. 753, 13 L. R. A. (N. S.) 337; and Springs v. Bank, 209 N. Y. 224, 103 N. E. 156, 52 L. R. A. (N. S.) 241. In each of these cases the drawee was held liable. In the opinion in each case was a suggestion that there was no reference in the face of the draft to the bills of lading. The expressions may properly be used in argument, but in neither case was the point now discussed under consideration, and no great weight can be accorded them. Other cases cited by appellant may be differentiated, or, if not, they are against the weight of recent authority.

The following cases apparently put the matter beyond doubt: Whitney v. Eliot Bank, 137 Mass. 351, 50 Am. Rep. 316; Redman v. Adams, 51 Me. 433; First Nat. Bank v. Lightner, 74 Kan. 736, 88 Pac. 59. In the last-named case the authorities are reviewed.

If the mere insertion of the words "against 214 B/C" in the body of the draft, without grammatical connection with the balance of the instrument, could, under any circumstances, render an otherwise ordinary draft a conditional order on a particular fund, that effect could not follow, in view of the facts developed in this case. The evidence discloses that, for a considerable time prior to the transaction here reviewed, there was a running account between Hubbard Bros. & Co. and Bandy, and at the date of the draft Bandy had a credit with Hub-

bard Bros. & Co. No accounts were kept with particular shipments of cotton. With his cotton business as a basis, Bandy had established a credit, and Hubbard Bros. & Co. were reimbursed by, and made a profit out of, the cotton from the sale of which they were reimbursed. The insertion of "214 B/C" cannot be held more than "an indication of a particular fund out of which reimbursement is to be made."

The judgment is so modified that interest on the amount adjudged against the Southern Pacific Company in favor of the Ouachita National Bank, and against Hubbard Bros. & Co. in favor of the Southern Pacific Company, shall run from November 30, 1904, and, as so modified, it is affirmed.

Modified and affirmed.