ANTHONY J. WILLIAMS *vs.* THE NATIONAL FRUIT EXCHANGE ET AL.

Third Judicial District, Bridgeport, April Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, JS.

A bank which discounts drafts with bills of lading attached, in the usual course of business, is not answerable to the buyer for the performance of the seller's contract, nor for a return to the buyer of the money paid by him to the bank in satisfaction of the drafts.

To obtain the protection of this rule, however, the discounting bank must have acted in good faith. If it was aware, for instance, that the seller was guilty of a breach of warranty and was trying to dispose of a quantity of unsound grapes for a sound price, as the plaintiff buyer attempted to allege in the present case, and discounted the drafts as part of that scheme, then the bank could not in equity and good conscience retain moneys so obtained against the demand of the buyer.

In the present case the discounting bank successfully demurred to the complaint, in its final form, as a mere attempt to set forth a cause of action against one or the other of two defendants, under § 120 of the Rules of Practice, while the question of the bank's liability to return money which, in view of its relation to the transaction, it could not in equity and good conscience retain, was not passed upon. *Held* that under these circumstances the whole complaint

Williams *v.* National Fruit Exchange.

had been erroneously disposed of upon a side issue, and that the cause must therefore be remanded to determine the sufficiency of the allegations and proof upon this branch of the case, which had apparently been overlooked or ignored.

The plaintiff alleged that the bank received the drafts and bills of lading "with full knowledge of the circumstances." *Held* that while it was not exactly clear as to what was meant by "circumstances," the word must be construed, in testing the sufficiency of the complaint, as including any properly alleged facts knowledge of which by the bank would tend to show bad faith upon its part in discounting the drafts.

An allegation that a bank received drafts for discount "subject to all equities and defenses" is a mere conclusion of law, and merits no consideration apart from the specific facts, if any, upon which it is based.

After a demurrer to the complaint has been sustained and the plaintiff has refused to plead further, there is nothing left in the case upon which to base a motion for a disclosure.

Argued April 14th—decided August 5th, 1920.

ACTION to recover damages growing out of an alleged breach of warranty in the sale of several carloads of grapes purchased by the plaintiff of the defendant National Fruit Exchange, and for a return of the purchase price paid by the plaintiff to the defendant Commercial National Bank, brought to the Superior Court in New Haven County, where successive demurrers, filed by the defendant bank to the complaint as amended from time to time, were sustained (*Keeler, Warner* and *Greene, Js.*) and judgment rendered for that defendant, from which the plaintiff appealed. *Error and cause remanded.*

*George E. Beers*, with whom, on the brief, was *Arthur C. Graves*, for the appellant (plaintiff).

*Arthur B. O'Keefe*, for the appellee (defendant Commercial National Bank).

GAGER, J. This action is brought primarily to recover damages by a purchaser from the seller of

unsound grapes. The complaint was several times demurred to and amended, and as finally amended was again demurred to, the demurrer was sustained, and judgment was rendered for the defendant Commercial National Bank of California. The allegations of fact are, therefore, to be taken as proved.

The plaintiff in New Haven bought of the defendant Fruit Exchange in California certain grapes to be shipped to New Haven, warranted sound, marketable, proper and suitable for use as food and for making wine. On their arrival in New Haven they were found not to be sound and marketable and suitable for food and for making wine, nor were they sound, marketable and suitable for food and wine when shipped, and when delivered in New Haven were worth $5,000 less than they would have been if as represented and warranted.

The defendant Fruit Exchange, the seller, upon shipping the grapes from California, drew upon the plaintiff to the extent of some $7,000, attached the bills of lading or delivery orders, and had the drafts discounted for his credit by the defendant Commercial Bank. The Fruit Exchange checked against the credit so obtained to its full extent, and the checks were paid by the bank. The Commercial Bank forwarded the drafts, with bills of lading attached, to the first National Bank of New Haven for collection, the First National having previously, at the request of the Commercial National, guaranteed payment by the plaintiff. The plaintiff alleges further, that at the time the Commercial National Bank discounted these drafts, with bills of lading attached, it had knowledge of the facts that the grapes when shipped were not sound and marketable, and were not suitable for food and making wine. There is a further allegation that the Commercial National took these drafts with bills of lading subject to all equities between the original parties, but this is

merely an allegation of law and is of no consequence apart from the facts upon which the allegation is based, and, in determining the validity of the complaint, should be disregarded, as a mere conclusion of law.

The plaintiff, to obtain possession of the bills of lading, was obliged to pay the drafts to the First National Bank before examining the grapes. The drafts were sight drafts and not formally accepted, but were paid by the plaintiff. Upon finding out the condition of the grapes the plaintiff brought this action against the Fruit Exchange and the Commercial National Bank, seeking to recover his loss by reason of the defects in the quality of the grapes. In this action the plaintiff garnisheed the First National, which then held the amount he had paid upon the drafts. The prayer for relief is for damages only, but the damages are claimed against the defendants, as stated in the prayer for relief, in the alternative: first, against the Fruit Exchange for misrepresentation and breach of warranty; second, against the Commercial National Bank as it became liable for such misrepresentation and breach of warranty as the contracting party substituted by the conduct of the parties for the original contracting party; third, against the Commercial Bank as in equity bound to refund moneys collected on this account as improperly held by it because of the defective condition of the grapes; fourth, damages against both on the ground that they were interested in the chose in action, both entitled to the proceeds therefrom, and both under a duty to refund such moneys as were improperly held and should in equity be refunded.

The defendant Commercial Bank demurred to the complaint in its final form for several reasons. The first two, and the only reasons passed upon by the court, were these: first, that a good cause of action was stated against the National Fruit Exchange, and therefore

pleading in the alternative or a claim for alternative relief was not permissible; second, because a positive liability was alleged as to the defendant Fruit Exchange, with no allegations relieving it from said liability, therefore pleading in the alternative and claims for alternative relief were improper. The court sustained the demurrer on both of these grounds and rendered judgment for the defendant Commercial National Bank.

The demurrer upon which the court ruled proceeds upon the single ground that the action is for relief against one or the other of two defendants under § 120 of the Rules of Practice. Practice Book, p. 238. From the statement it is apparent that the complaint in its final form presents a somewhat more complicated situation than the demurrer contemplates. It will tend to clarify our view, and possibly be of use in the further prosecution of the case, if such there be, if we first determine exactly the relation of the plaintiff to the Commercial Bank. The action is by a buyer against a seller and the seller's bank, the Commercial. As against the seller, there can be no question but that the complaint states a cause of action for damages for the breach of representation and of warranty contained in the contract of sale. As against the bank, the complaint does not by any well pleaded facts show that it was a party to the contract of sale, and therefore no action for the breach of the contract of sale will lie against it. That the Commercial Bank required the First National to guarantee payment by the plaintiff before it would discount the drafts, does not affect the relation of the plaintiff to the Fruit Exchange. This is substantially admitted by the plaintiff when, in his brief, he says: "We may have no cause of action as such against the bank by which we could obtain judgment for breach of warranty or misrepresentation, which judgment might, of course, reach a sum far beyond that which the bank had collected." And

again: "We are not, in this aspect of the case, seeking to hold the bank liable to carry out the contract but simply to refrain from retaining money which it ought not to have received." The Commercial Bank is brought into the case by its discount of drafts upon the plaintiff, with bills of lading attached. The defendant Fruit Exchange, upon shipping the grapes, drew sight drafts upon the plaintiff, with bills of lading attached in some cases and delivery orders attached in others, and indorsed and delivered the drafts to the Commercial Bank. The bank allowed the Fruit Exchange to draw checks upon the full amount of the drafts and duly paid the checks. The sight drafts were forwarded to the National Bank in New Haven for collection and immediately paid by the plaintiff. Such payment was the equivalent of acceptance of time drafts and closed the transaction as between the plaintiff and the Commercial Bank. The latter had received from the drawee the money called for by the drafts it had discounted. Omitting, for the moment, the allegation as to notice by the Commercial Bank, the plaintiff, having paid his drafts and received the bills of lading, has now no claim against the Commercial Bank arising out of the transaction. It is the ordinary case where a bank discounts a draft in its favor with bill of lading attached. The law as to liability for any breach of contract upon the part of the seller was correctly stated in *Munson* v. *DeTamble Motors Co.*, 88 Conn. 415, 420, 91 Atl. 531: " ' A bank which discounts a draft with bill of lading attached is not, in the absence of bad faith, answerable to the drawee for the performance of the consignor's contract.' " Citing the *Alfalfa* case, *infra*. In the *Munson* case the rule was held not to apply because the defendant, before shipment, bought the propertly sold, together with a draft, and itself shipped the property and undertook to perform the seller's contract. There

is no sufficient allegation that the Commercial Bank bought the grapes and itself undertook, as in the *Munson* case, to carry out the contract. The general rule, as briefly stated in the *Munson* case, is thoroughly well-settled law. *Hawkins* v. *Alfalfa Products Co.*, 152 Ky. 152, 11 L. R. A. (N. S.) 600, appears to be exactly in point. The Alfalfa Company in Nebraska sold Hawkins in Kentucky a carload of meal. Upon receiving the bill of lading the Alfalfa Company drew on Hawkins for the price, and attached the draft to the bill of lading and discounted the draft in its local bank. The local bank forwarded the draft with bill of lading attached to a bank in Kentucky for collection. Hawkins paid the draft to the Kentucky bank to get the bill of lading, and on opening the car found the meal worthless. Hawkins immediately sued the Alfalfa Company and its local bank of discount, and attached the money he had paid them in the hands of the Kentucky bank. His claim was that the local bank, having discounted the draft, was liable to him for the performance of the contract and to refund the amount of the discounted draft. The court examined the cases quite fully and as a result says (p. 159): "In paying the draft and taking possession of the goods the right of the buyer to enforce compliance with his contract by the party with whom the contract was made is unimpaired, and to the party with whom the contract was made he must look for damages for its breach. If the goods do not fulfill the contract, the buyer must look to the seller for compensation or recoupment, and if they are damaged in transit by the fault of the carrier, he must look to the carrier for indemnity. When the buyer in a case like this pays the draft, the transaction between him, and the owner and holder of the draft, is a closed incident. His acceptance of the draft creates a new and independent contract and the only one that exists between him and the

bank, and when he has paid the draft this contract is fully executed and the bank released from all liability to him." The plaintiff cites *Searles Bros.* v. *Smith Grain Co.*, 80 Miss. 688, 32 So. 287, as supporting the contrary claim. The opinion in the *Alfalfa* case shows that Mississippi was apparently the only State then holding that the bank, discounting in ordinary course, was liable for the performance of the contract, and shows that the Texas case of *Landa* v. *Lattin Bros.*, 19 Tex. Civ. App. 246, on which the decision in the *Searles* case was expressly based, has since been over-ruled. *Central Mercantile Co.* v. *Oklahoma State Bank*, 83 Kan. 504, 112 Pac. 114, 33 L. R. A. (N. S.) 954; *American Thresherman* v. *Citizens Bank*, 154 Wis. 366, 141 N. W. 210, 49 L. R. A. (N. S.) 644, and note page 650; *Springs* v. *Hanover National Bank*, 209 N. Y. 224, 103 N. E. 156, 52 L. R. A. (N. S.) 241 and note; *Cosmos Cotton Co.* v. *First National Bank*, 171 Ala. 392, 54 So. 621, 32 L. R. A. (N. S.) 1173 and note; *Mason* v. *Nelson Cotton Co.*, 148 N. Car. 492, 62 S. E. 625, 18 L. R. A. (N. S.) 1221. It is perfectly clear upon authority, then, that if the transaction was the ordinary case of discount of draft with bill of lading attached, the defendant Commercial Bank would be under no liability to the plaintiff, whether for breach of contract or for the return of money received on payment of the draft.

We turn now to the question postponed above, as to whether the complaint discloses any allegations of fact which take the case out of the general rule just stated. In his final complaint the plaintiff, for the first time, attempts to show that the Commercial Bank took the drafts out of the usual course of business, and alleges that the Commercial Bank received the drafts with bill of lading attached, "with full knowledge of the circumstances and subject to all equities and defenses." The allegation "subject to all equities and defenses," apart

from specific facts, is but a conclusion of law and is not to be considered. For the purpose of testing the sufficiency of the complaint, the "circumstances" must be construed as including any sufficiently-alleged facts knowledge of which would take the Commercial Bank out from the ordinary case of discount of drafts with bill of lading attached, above referred to, and would bring it within the operation of the frequently-stated qualification of the general rule, to wit: that the discounting bank must have acted in good faith, to invoke the protection of the rule. In *Munson* v. *DeTamble Motors Co.*, 88 Conn. 415, 420, 91 Atl. 531, the qualification is "in the absence of bad faith." In *Springs* v. *Hanover National Bank*, 209 N. Y. 224 (103 N. E. 156), it is said, quoting from *Hoffman & Co.* v. *Bank of Milwaukee*, 79 U. S. (12 Wall.) 181 (20 L. Ed. 363): "Money paid, as in this case, by the acceptor of a bill of exchange to the payee of the same, or to a subsequent indorsee, in discharge of his legal obligation as such, is not a payment by mistake nor without consideration, unless it be shown that the instrument was fraudulent in its inception, or that the consideration was illegal, or that the facts and circumstances which impeach the transaction, as between the acceptor and the drawer, were known to the payee or subsequent indorsee at the time he became the holder of the instrument." It will be found that in all complete statements of the rule, absence of bad faith on the part of the discounting bank is essential to its protection under the main rule.

The complaint here is not exactly clear as to what is meant by "circumstances." Those alleged in the complaint are that the bank knew the use to which the grapes were to be put, knew the warranty, knew that the grapes were not sound when shipped nor suitable for the purposes for which they were sold. Whatever rights the defendant may have upon a motion to make the

circumstances more specific, it remains that under the allegation proof could be offered of any circumstances which tended to affect the relations of the bank to the seller of the grapes bearing upon the question of good faith. There is in the complaint clearly an attempt to state facts for the purpose of bringing the bank within the exception to the rule above stated, as the basis of the claim that the bank is liable to refund, not because it broke the contract of warranty, but because, knowing all the facts, it first took the drafts as part of a scheme to work off unsound grapes for a sound price, and has so far succeeded that it now holds money so obtained which, *ex æquo et bono*, ought to be paid over to the plaintiff. *Northrop* v. *Graves*, 19 Conn. 548. Upon the pleadings, however, no question is before us based upon this view of the case, or upon the sufficiency of the allegations, although it is upon this view that the third and fourth prayers for relief are clearly based. The complaint as a whole cannot finally be disposed of until the question with reference to sufficiency of allegation and of proof upon this part of the case is settled. That these questions are in the complaint, and are untouched by any motion or pleading, cannot be denied.

The scope of the sustained demurrers is altogether too limited to bring these questions before us. Section 120 of the Rules of Practice (Practice Book, p. 238)provides that "persons may be joined as defendants against whom the right to relief is alleged to exist in the alternative, although a right to relief against one may be inconsistent with a right to relief against the other." The position of the defendant bank and the attitude of the court in ruling upon the demurrers sustained, appears to be based upon the theory that the action is one under this section alone. The theory of the demurrer and of the ruling is, in substance, that because a clear cause of action for breach of warranty is stated against the

Fruit Exchange and nothing is alleged by which the liability of the Fruit Exchange has been transferred to the bank as an alternative and as inconsistent with relief against the Exchange, therefore the complaint itself is bad. This is, as we have seen, altogether too narrow a view of the complaint. Indeed, it may well be doubted if the complaint should be construed upon this theory at all. The pleader may have been misled by the frequency of the so-called alternative allegations. If the complaint was intended to present the question of alternative relief as between the parties defendant, we think it is not good as an application of Rule 120. But it does not at all follow that the complaint does not state a good cause of action for some of the relief demanded. The demurrer is in terms addressed to the complaint. It should have been addressed to the demands for relief which the pleader deemed were not warranted by the complaint. Practice Book, p. 252, § 167. Had the demurrer in this case been addressed to the relief claimed to be based upon the provisions of Rule 120, and not to the complaint, the demurrer might properly have been sustained, and this would not have affected the status of the complaint as a ground for the remaining claims for relief. The third and fourth prayers for relief and the conception of the complaint as for the return of money under the principles of *Northrop v. Graves*, 19 Conn. 548, are entirely ignored. The whole complaint has been disposed of upon a side issue. To maintain the action for the return of money unjustly detained, the breach of warranty of contract must of course first be alleged and proved, but as has been shown above, the cause of action against the bank is not for breach by the Fruit Exchange of its contract, but on the proof of such facts as may show that in discounting the draft at all it acted in bad faith toward the plaintiff.

The motion for a disclosure is not before us. The

demurrer to the complaint was sustained on January 16th. The plaintiff did not plead further, and nothing was left upon which to found the motion for a disclosure which, upon the face of the judgment, was decided January 21st, and after the complaint itself, under the ruling upon the demurrer, had gone out.

There was error in sustaining the demurrer to the complaint and the case is remanded to be proceeded with according to law.

In this opinion the other judges concurred.