THE BANK OF AMERICA, Appellant, *v.* JOHN H. WAYDELL et al., Respondents.

1. BANKING — RIGHTS OF BANK IN COMMERCIAL PAPER SENT TO IT FOR COLLECTION. When a draft is delivered to the payee for collection only, which in turn remits it to its correspondent bank for collection, the latter acquires no better title to it or its proceeds than the payee, unless it becomes a *bona fide* purchaser of it for value or makes advances upon it in good faith without notice of any defect in title, and the mere existence of an indebtedness of the payee to the bank does not constitute it a holder for value.

2. RESTRICTIVE INDORSEMENT. An indorsement in blank accompanied by a letter stating that the enclosed draft was for "collection and credit" must be read together, and the effect is to make the indorsement restrictive and the same in character as if the contents of the letter had been incorporated in the indorsement.

*Bank of America* v. *Waydell,* 103 A₁p Div. 25, affirmed.

(Argued December 14, 1906; decided January 8, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 6, 1905, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Eldon Bisbee* and *Charles E. Rushmore* for appellant. The plaintiff acquired a lien on the draft and is entitled to collect the same and apply the proceeds to the indebtedness of A. Ives & Sons to it. (*C. E. Bank* v. *F. Nat. Bank,* 118 N. Y. 443; *Castle* v. *Corn Exchange Bank,* 148 N. Y. 122; *Naser* v. *F. Nat. Bank,* 116 N. Y. 492; *Hatch* v. *F. Nat. Bank,* 147 N. Y. 184; *Dickerson* v. *Wason,* 47 N. Y. 439.) The plaintiff is a *bona fide* holder for value without notice. It is, therefore, unaffected by any equities existing in favor of antecedent parties to the instrument. (*Bank of N. Y.* v. *Vanderhorst,* 32 N. Y. 553; *Brookman* v. *Metcalf,* 32 N. Y. 591; Morse on Banking [4th ed.], § 591; *Bank of Metropolis* v. *N. E. Bank,* 1 How. [U. S.] 234; *Wood* v. *B. Nat. Bank,* 129 Mass. 358; *Vickery* v. *S. S. Assn,* 21 Fed. Rep. 773; *A. E. Nat. Bank* v. *Theummler,* 195 Ill. 90; *Wyman* v. *C. Nat. Bank,* 5 Colo. 30; *McBride* v. *Farmers' Bank,* 26 N. Y. 450; *Brooks* v. *Sullivan,* 129 N. C. 190; *Charleston Bank* v. *Johnston,* 105 Tenn. 521; *Payne* v. *Zell,* 98 Va. 294.) As the plaintiff holds the legal title to the draft, and the defendants are the parties primarily liable thereupon, the latter cannot defend against their liability on the acceptance because of equities growing out of the relations of other par-

ties to the instrument.   (Daniel on Neg. Inst. [5th ed.] § 532;
Edwards on Bills & Notes, 430, 431; 4 Am. & Eng. Ency. of
Law [2d ed.], 470; Neg. Inst. Law, §§ 90, 112; *Williams*
v. *Brown*, 2 Keyes, 486; *Paddon* v. *Williams*, 2 Abb. Pr.
[N. S.] 88; *Freeman* v. *Falconer*, 13 J. & S. 383; *Amy* v.
*Stein*, 16 J. & S. 512; *Tompkins* v. *Carner*, 27 N. Y. S. R.
264; *Carpenter* v. *Cummings*, 18 Misc. Rep. 587; *McKay*
v. *Draper*, 27 N. Y. 256; *City Bank* v. *Perkins*, 29 N. Y.
554; *C. E. Bank* v. *F. Nat. Bank*, 118 N. Y. 443; *Castle* v.
*C. E. Bank*, 148 N. Y. 122.)

*Lemuel E. Quigg* for respondents.   Although the draft in
suit was indorsed in blank the letter of Ives & Sons transmit-
ting it to the Bank of America had all the effect, as between
Ives and the bank, of an indorsement " For Collection."   (2
Parsons on Prom. Notes, 20.)   An indorsement "for collec-
tion and credit," or, as in this case, an indorsement in blank,
accompanied by written instruction that it was for collection
and credit, was, as between the parties, a restrictive indorse-
ment, and constituted the bank simply the agent of Ives to
present the paper, to obtain its acceptance and to demand
payment of it when due, and, if paid, to credit the proceeds to
Ives, but this authority, or any part of it could be at any time
revoked.   (1 Daniel on Neg. Inst. 552, 553; 2 Randolph on
Com. Paper, 367, 368; *Dickerson* v. *Wason*, 47 N. Y. 439;
*C. E. Bank* v. *F. Nat. Bank*, 118 N. Y. 443.)   There was
no consideration.   (*Coddington* v. *Bay*, 20 Johns. 637; 5
Johns. Ch. 54; *Wardell* v.`Howell*, 9 Wend. 170; *Rosa* v.
*Brotherson*, 10 Wend. 85; *Hart* v. *Palmer*, 12 Wend. 523;
*Ontario Bank* v. *Worthington*, 12 Wend. 593; *Morton* v.
*Rogers*, 14 Wend. 575; 12 Wend. 487; *Payne* v. *Cutler*, 13
Wend. 605; *Francia* v. *Joseph*, 3 Edw. Ch. 182; *Commercial
Bank* v. *Norton*, 1 Hill, 501; *Manhattan Co.* v. *Reynolds*,
2 Hill, 140.)

O'BRIEN, J.   The firm of J. F. Hasty & Sons of Detroit,
drew their bill of exchange or draft, dated August 11, 1900,

and addressed to the defendants in their firm name of Way-
dell & Co. directing them, sixty days after date, to pay to the
order of Ives & Son, the sum of $1,500 value received, and
to charge the same to the account of the drawers. Ives &
Son were bankers in Detroit. Proof was given at the trial
and a finding made by the court that the draft in question
was delivered to the payees for the purpose of collection,
although the indorsement was in blank. Ives & Son, the
Detroit bankers, remitted the bill to the plaintiff with a gen-
eral indorsement; but it was accompanied by a letter which
stated that they inclosed for collection and credit Waydell &
Co. $1,500 no protest for non-acceptance. It appears that
Ives & Son had an account with the plaintiff which had been
running a number of years. They had borrowed from the
plaintiff $25,000 upon a collateral security note and agree-
ment, which contained, in substance, the following stipula-
tion : " The undersigned hereby agree to deposit with the said
Bank such additional collateral security as the said Bank may
from time to time demand ; and also hereby give to the said
Bank a lien for the amount of all the liabilities aforesaid upon
all the property and securities at any time given unto or left
in the possession of the said Bank by the undersigned.
*  *  *  The undersigned do hereby further authorize the
said Bank, at its option, at any time, to appropriate and apply
to the payment of any of the said liabilities, whether now
existing or hereafter contracted, any and all moneys now or
hereafter in the hands of said Bank on deposit, or otherwise,
to the credit of or belonging to the undersigned, whether the
said liabilities are then due or not due." The plaintiff claims
to be the owner of the draft by virtue of the indorsement to
it and the stipulations contained in the collateral security
note. When the plaintiff received the draft in question there
was a large sum of money due to it from Ives & Son, the
payees of the bill.

The plaintiff received the draft on or about August 15th,
1900. It was presented to the defendants, the drawees, for
acceptance on the same day, and was duly accepted by them

in their firm name on the next day payable at plaintiff's bank. By the terms of the bill and the acceptance, which are general and absolute, the draft became payable on October 10th, 1900. After the acceptance and before it became due Ives & Son, to whom the draft had been delivered for collection, became insolvent, and before maturity of the bill notice was given to the plaintiff by the drawers revoking its authority to collect it and, also, to the defendants not to pay the same. It appears that the plaintiff never paid Ives & Son for the paper, nor either at the time when it received it, or any time thereafter, did the bank give to them any credit on the faith of the bill or its acceptance ; nor did it release any prior or then existing obligation of Ives & Son ; nor was any debt then or thereafter owing from Ives & Son in any way reduced, offset or discharged by its possession of the paper ; nor did the bank make any entry whatsoever with respect to the draft, or its contents, as between it and Ives & Son ; nor did it do any act other than to present it to the defendants for acceptance and hold it against the time when it should become due.

The facts stated constituted the plaintiff a mere collecting agent of the Detroit bankers who had remitted the draft, and as it received the paper in the character of a collecting agent only, it obtained no better title to it, or to the proceeds thereof, than the remitting bankers had ; unless it became a purchaser for value without notice of any defect of title. The real owners of the bill were Hasty & Co. who drew it upon the defendants, by whom it was accepted. As the plaintiff never parted with anything, gave no credit, relinquished no security, or assumed any burden or responsibility on the faith of the paper, it could not, in commercial language, be treated as a *bona fide* holder of the paper or of the money represented by it.

Without inquiring as to what change, if any, has been effected by the recent statute in regard to commercial paper, it is enough to say that the plaintiff never appropriated the paper in any way, or its proceeds. As already stated, it paid nothing to Ives & Son, gave them no credit, made no entry or writing in their account, or did any other act importing a

consideration, and it had notice a month before the paper fell due and was distinctly advised that the Detroit bankers did not own it; but that the drawer did, and the recovery of the draft was demanded. There can be no doubt, we think, that under these circumstances the true owner of the paper had a right to recall it from the plaintiff, in whose possession it was for the purpose of collection. It is true that the paper came to the plaintiff's hands by general indorsement from Ives & Son, but the indorsement and the letter of advice in transmission must be read together, and so reading them the legal effect was to make the indorsement restrictive and the same in character as if the contents of the letter had been incorporated in the indorsement. It follows, therefore, that upon the facts found, and as to which there was little if any dispute, the plaintiff never acquired title to the bill. It was an agent merely for its collection. It was only in that character that Ives & Son received the paper from the drawer, and that was the only title that was conferred upon the plaintiff.

There are no elements in the case that can give to the plaintiff the character of a *bona fide* holder for value without notice. It had notice of the real situation before the paper fell due, and as it did not part with, or pay any valuable consideration, at the time it received the paper, or at any other time, it is in no worse situation, legally, than it was before it received it. This case rests upon rules and principles that are familiar. The cases and authorities that amply support the principles applicable to the case are very fully examined in the opinion of the learned court below, and it is not needful to make any further reference to them here. It would be only repeating and restating rules applicable to commercial paper that have been applied in this state ever since the case of *Coddington* v. *Bay* (20 Johns. 637).

We think the judgment is right and should be affirmed, with costs.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, WERNER, HISCOCK and CHASE, JJ., concur.

Judgment affirmed.