(174 App. Div. 1)
CHURCHILL v. ST. GEORGE DEVELOPMENT CO. OF FLORIDA et al.

(Supreme Court, Appellate Division, Fourth Department.   June 15, 1916.)

1. ACTION ⬄27(1)—CHARACTER—DETERMINATION FROM COMPLAINT.
   The character of an action is to be determined from the complaint.
   [Ed. Note.—For other cases, see Action, Cent. Dig. §§ 160–176, 195;
   Dec. Dig. ⬄27(1).]

2. FRAUD ⬄41—ACTION—COMPLAINT—CONSTRUCTION.
   In an action involving a purchase by plaintiff of stock in defendant
   corporation, the complaint, containing every element essential in an
   action in fraud to recover the damages sustained thereby, though it also
   embodied allegations of an attempted rescission preceding the action
   and the refusal of the defendants to rescind, its prayer being, not for
   rescission, but for damages in the amount paid for the stock, plus ex-
   penses incurred in an investigation following the purchase, could be con-
   strued as embodying an action in fraud for damages, and could measure
   the rights of the parties with such construction in view.
   [Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 36, 37;  Dec. Dig.
   ⬄41.]

3. PLEADING ⬄35—DISREGARD OF SURPLUSAGE.
   In an action for damages growing out of plaintiff's purchase of stock
   in defendant corporation, in reaching an equitable result between the
   parties, the court could disregard the allegations of the complaint as to
   rescission, and treat them as mere surplusage.
   [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 76–80;  Dec.
   Dig. ⬄35.]

4. CORPORATIONS ⬄423—FALSE REPRESENTATIONS BY AGENT.
   Personal reliance by a buyer of corporate stock upon the selling agent
   of the corporation does not alter the responsibility of the parties for any
   false representations, so long as the representations themselves are the
   producing cause of the purchase.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1692–1695,
   1903, 1906;  Dec. Dig. ⬄423.]

5. FRAUD ⬄9—MISREPRESENTATIONS—CORPORATE PROSPECTUS.
   The impression ordinarily to be created by the prospectus of a devel-
   opment company selling stock is the one from which the liability of
   the company must be gauged, and for such general impression the cor-
   poration and its directors are responsible.
   [Ed. Note.—For other cases, see Fraud, Cent. Dig. § 8;  Dec. Dig.
   ⬄9.]

6. CORPORATIONS ⬄306—MISREPRESENTATIONS OF OFFICERS—LIABILITY.
   For false statements in the prospectus of a development company used
   in selling stock the company and each of its officers and directors was
   liable.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1457, 1458;
   Dec. Dig. ⬄306.]

7. CORPORATIONS ⬄306—MISREPRESENTATIONS OF OFFICERS—SHARING IN
   PROFITS.
   In an action by the buyer of stock in a development company against
   the company and its officers and directors for fraud in inducing the pur-
   chase, which of the defendants received the profits of the sale is not ma-
   terial, since each one who participated in the fraud to plaintiff's detri-
   ment is liable, whether he shared in the profits or not.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1457, 1458;
   Dec. Dig. ⬄306.]

⬄For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. CORPORATIONS ☞426(10)—MISREPRESENTATIONS OF AGENT—LIABILITY OF PRINCIPAL.

A development company, the stock of which was being sold by its officers and directors, which received the profits of the sale, induced by false oral declarations, was liable, since the principal, who accepts the benefits of a transaction negotiated by its agent, adopts with such benefits the means taken to procure them, and, though innocent of intentional wrong, may not retain such benefits and repudiate the fraud giving rise to them.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1702, 1704, 1714; Dec. Dig. ☞426(10).]

9. CORPORATIONS ☞306 — MISREPRESENTATIONS OF OFFICERS — PERSONAL KNOWLEDGE.

One who sold stock by misrepresentations could not escape responsibility by pleading lack of personal knowledge of the truth of the declarations made by him, since a statement made as if from personal knowledge, without such, is as fraudulent as though falsely made with intention.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1457, 1458; Dec. Dig. ☞306.]

10. FRAUD ☞25—MISREPRESENTATIONS—PURCHASE OF CORPORATE STOCK—DAMAGE.

The buyer of corporate stock, induced thereto by misrepresentations, has suffered legal damage if in fact the stock is worth less than it would be, had the representations been true.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 24; Dec. Dig. ☞25.]

11. FRAUD ☞59(4)—MISREPRESENTATIONS—PRESUMPTIONS OF DAMAGE.

In the absence of proof of actual damage, nominal damage is to be presumed to have resulted to a party induced to purchase by misrepresentations.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 64; Dec. Dig. ☞59(4).]

Appeal from Trial Term, Erie County.

Action by Charles E. Churchill against the St. George Development Company of Florida and others. From a judgment of nonsuit, and from an order denying plaintiff's motion for new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MERRELL, and DE ANGELIS, JJ.

Wortley B. Paul, of Buffalo, for appellant.

Edwin L. Dolson, of Buffalo, for respondents Day and St. George Development Co.

Frank Gibbons, of Buffalo, for respondent Decker.

LAMBERT, J. By this action the plaintiff seeks damages growing out of a purchase by him of certain stock in the defendant corporation. The defendants, other than the corporation, were all officers and directors thereof, at the time of the transfer out of which the action arose. None of such individual defendants, except Day and Decker were served. Controversy has arisen relative to the character of the action, and the relative position of the three defendants litigating depends to some extent on whether the action is generally for

damages occasioned by fraud or is in form assumpsit for the money paid for the stock.

[1-3] The character of the action is to be determined from the complaint. Examination of this pleading discloses that it contains every element essential in an action in fraud to recover the damages sustained thereby. True, it also embodies allegations of an attempted rescission preceding the action and the refusal of the defendants to rescind. Its prayer for relief is not for rescission, but is for damages alleged to have been occasioned, in the sum of $1,332.31. True, this amount is the amount paid for the stock, plus certain expenses incurred in an investigation following the purchase. That coincidence, however, does not necessarily determine the character of the action. Inasmuch as the complaint contains all the essential allegations of an action in fraud for the damages sustained thereby, we are at liberty to construe same as being that form of action, and to admeasure the rights of the parties with such construction in view. In reaching an equitable result between these parties, we are at liberty to disregard the allegations as to rescission and treat them as mere surplusage. Novotny v. Kosloff, 214 N. Y. 12, 108 N. E. 189.

So regarded, there is no difference in the status of the defendants. The development company as principal, the other two defendants as agents, or vice versa, are all equally liable for false and fraudulent representations made, resulting in damage to plaintiff. This is true, irrespective of which of them profited by the transaction. Laska v. Harris, 215 N. Y. 554, 109 N. E. 599.

[4] The defendant corporation was the owner of about 5,000 acres of land situated at St. George, on the Gulf of Mexico, in Florida. This land it was engaged in developing and marketing. The plaintiff was employed in New York City, and his business and personal relations brought him in touch with the defendant Decker, who, with the other officials of the defendant company, resided at Buffalo. In the course of their association, Decker disclosed to plaintiff something of the project, and eventually invited him to participate by a purchase of stock. Plaintiff was supplied with a printed prospectus descriptive of the venture and of the lands constituting the subject thereof. Through Decker he was brought in touch with others of the organization, and various representations relative to same were made orally. It sufficiently appears that the purchase finally made was brought about by means of the prospectus and the statements. Plaintiff had no personal knowledge of this situation. His entire information was derived from these sources. Very likely his personal acquaintance with and reliance upon Decker aided in the sale. Such personal reliance does not alter the responsibility of the parties, however. The statements themselves were the producing cause of the purchase, and, whatever the means adopted to create reliance on such statements, they can avail the defendants nothing.

[5] The prospectus is most glowing in its description. Its effect is to be measured by ordinary understanding of the ordinary mind. Responsibility therefor extends as well to those facts suppressed as to those stated. The description therein creates of necessity a general impression of the project, and the impression ordinarily to be cre-

ated thereby is the one from which liability of the defendant must be gauged, and for such general impression the corporation and its directors are responsible. Downey v. Finucane, 205 N. Y. 251, 264, 98 N. E. 391, 394, 40 L. R. A. (N. S.) 307. In this case, in discussing a prospectus, the opinion quotes with approval from an English case as follows:

"I do not care by what means it is conveyed—by what trick or device or ambiguous language; all those are expedients by which fraudulent people seem to think they can escape from the real substance of the transaction. If by a number of statements you intentionally give a false impression and induce a person to act upon it, it is not the less false although, if one takes each statement by itself, there may be a difficulty in showing that any specific statement is untrue."

This particular prospectus, both by its express declarations and by skillful omission of details, described a tract of land located upon a deep-water harbor, so situated as to be readily available for reception of freight cargoes from ocean-going boats in a harbor well located and well protected from storms. It describes a pier already built, and in actual use and traffic to and from such harbor, already established to some considerable extent. It indicates a location feasible and almost necessary as a railroad terminus in conjunction with such ocean traffic. It holds out glowing promises of fortunes made in farming upon 10-acre tracts. It embodies a proposition for the building of a town, and indicates great natural advantages for summer and other residences. Among its attractive features is its proximity to a railroad terminus at Carrabelle, being a terminus of the G., F. & A. Railroad and located about three miles from this tract. It describes a daily boat connection, affording means of transit from St. George to Carrabelle and thence to various important centers. In great detail it gives schedules of profits to be derived from farming, and discusses possibilities of full payment for purchases from the first year's profits. It is replete with illustrations, not, it is true, therein identified as having been taken upon this property, but which by location and description do and were intended to indicate description of conditions on this property.

This record sufficiently shows many of such representations to be without foundation in fact. It appears that the harbor is not of the character described, and that it is of such a depth as to preclude any such ocean traffic as is indicated in this prospectus and as was so glowingly described orally to the plaintiff. The railroad terminus at Carrabelle exists. It is located, however, across a river, and a river not bridged. True, it is only about three miles away, but is about as effective, so far as benefit to this project is concerned, as though it was a hundred miles distant. The glowing description of farming operations find truthful evidence only to the extent that this land is almost, if not entirely, in a wild and uncultivated state, and largely interspersed with lands impossible of cultivation, except after extensive drainage. The daily boat service dwindles to insignificance, for it develops that the dock in question, although actually built, is largely impractical, has fallen into a state of disrepair, and that at the most only an oc-

casional and small boat stops there. In general, although definite statement was carefully avoided in this production, yet a project is described as being well under process of development, with tangible and extensive improvements and in a condition for marketing. The real situation proves far different, and the brief observations above indicate sufficiently that this prospectus is misleading, equivocal, and false in the picture it paints of this project, and that it was intended so to be.

[6] It is not our purpose herein to point out each particular in which we deem this record to evidence false statements made and the falsity thereof. It is enough to indicate that we regard the proof, as presented, prima facie evidence of false statements knowingly made in this prospectus. For such statements, each of the defendants is to be held liable. These written representations were supplemented by oral statements of the same general character. True, the plaintiff has written that the prospectus alone would not have caused his purchase. This does not indicate that it was not a producing cause therefor. No doubt it took the added touch of friendship and business reliance upon Decker, and the united efforts of others of the defendants, to produce in plaintiff's mind such a picture of this investment as would induce the purchase. However, the prospectus, as well as the oral declarations, is an element in causing that result.

[7, 8] It is not clear from this record which of the defendants received the proceeds of this sale. That is not, however, necessarily a material inquiry. Each defendant who participated in the fraud, to the detriment of the plaintiff, is equally liable, whether he shared in the profits of the transaction or not. Laska v. Harris, supra. If it should develop, in the course of the new trial to be ordered, that the corporation received the profits of this sale, then such corporation is also responsible for the oral declarations made by its officers to induce the sale. A principal, who accepts the benefits of a transaction negotiated by his agent, adopts with such benefits the means taken to procure them. Even though innocent of intentional wrong, the principal may not retain such benefits and repudiate the fraud which gave rise to them. Green v. Des Garets, 210 N. Y. 79, 103 N. E. 964; Taylor v. Commercial Bank, 174 N. Y. 181–188, 66 N. E. 726, 62 L. R. A. 783, 95 Am. St. Rep. 564.

[9] Neither may any defendant escape responsibility through plea of lack of personal knowledge of the truth of declarations made by him. The makers of these representations, whether by prospectus or orally, either knew or did not know the actual facts with reference to this tract of land. If they did know, and misrepresented, then they are clearly liable for such fraud. If they did not know its condition, then they knew of such lack of knowledge on their own part. Then their statement, made as if from personal knowledge, is equally fraudulent as though intentionally falsely made. If damage ensues from either of these two situations, the person making representations must be held to responsibility. Rothschild v. Mack, 115 N. Y. 1, 21 N. E. 726; Kountze v. Kennedy, 147 N. Y. 124, 41 N. E. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651; Hadcock v. Osmer, 153 N. Y. 604, 47 N. E. 923.

In our view, the court below improperly dismissed the complaint. We do not intend to indicate our conception of a proper disposition of the questions of fact in the case, but merely to hold that a question of fact is presented. We realize that it is true that many of the statements relied upon by the plaintiff, taken separately, are susceptible of reasonable and honest explanation. But as was said in Bank v. Miller, 163 N. Y. 167, 57 N. E. 308:

"Fraud is one of the broadest issues known to the law, for it can seldom be proven by direct evidence, but is dependent upon circumstances which, separately considered, may be quite immaterial, but when combined are not only material, but have great persuasive force."

It is argued that plaintiff's case lacks the element of proof of resulting damage.

[10] Such argument embodies the misconception that plaintiff must show his stock worth less than he paid for it. No doubt plaintiff thought he was getting a bargain in his purchase, and he was entitled to purchase for less than the real value of the stock if he could. He has been damaged if, in fact, the stock is worth less than it would be worth if the representations made were true. As was said in Allaire v. Whitney, 1 Hill, 484:

"Fraud in a contract can hardly be conceived without being attended with damage in fact."

This case was cited with approval in Isman v. Loring, 130 App. Div. 848, 115 N. Y. Supp. 933.

[11] In the absence of proof of actual damage, at least nominal damage is to be presumed. Northrop v. Hill, 57 N. Y. 351, 15 Am. Rep. 501. The evidence adduced by the plaintiff upon the trial would seem to present prima facie evidence of false and fraudulent statements. The intention to defraud is a natural inference following from the fact of deception. Upon this record sufficient proof was made to justify the submission of the various issues to a jury for their determination.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event of the action.