Archibald & Lewis Company, Respondent, Appellant, *v.* Banque Internationale de Commerce, Appellant, Respondent, Impleaded with Georges Vemian, Defendant.

First Department, February 26, 1926.

Banks and banking — action against bank to recover amount of drafts paid by plaintiff, purchaser of goods — foreign drafts were delivered to defendant for collection against shipping papers — defendant forwarded drafts to agent with unrestricted indorsement but payment was refused because of absence of consular invoices — defendant wired agent that consular invoices had been sent directly to plaintiff — plaintiff then paid drafts — defendant did not give value for drafts — shipping documents were forgeries and consular invoices were never issued — defendant did not know facts until money had been paid drawer — Federal Bills of Lading Act (39 U. S. Stat. at Large, chap. 415) not applicable to foreign bills of lading — defendant not made liable under Personal Property Law, §§ 221–223, by unqualified indorsement to agent — defendant's statement that consular invoices had been sent was false and made without knowledge of truth or falsity — plaintiff acted on statement to its damage — defendant is liable.

The Federal Bills of Lading Act (39 U. S. Stat. at Large, chap. 415) is not applicable to foreign bills of lading.

The defendant bank, which received for collection certain drafts drawn by the seller of goods, a resident of Bulgaria, on the purchaser, a resident of this State, which drafts were indorsed without restriction by the defendant to its agent in New York city, with instructions to collect the amount and remit, which was done after the defendant had assured the plaintiff by telegraph that consular invoices had been sent directly to the plaintiff, is not liable to the plaintiff under sections 221–223 of the Personal Property Law on its general indorsement of the bills of lading to its agent on the theory of warranty of title, though the shipping documents were forgeries and consular invoices were never issued, for no liability is imposed by the statute on one who merely receives and transfers drafts for collection and, in fact, the statute precludes any such liability. The defendant bank acquired no title to the drafts or bills of lading or to the proceeds of the drafts when received and did not know of the alleged fraud until after the money had been remitted to the drawer of the drafts.

However, the defendant is liable on the ground of false and fraudulent representations, since it appears that after the plaintiff refused to accept the drafts on the ground that they were not accompanied by consular invoices, the defendant telegraphed its agent in New York that the consular invoices had been sent directly to the plaintiff; that such information was false, in fact, and was made with a reckless disregard for its truth or falsity; that the defendant did not know of its own knowledge whether or not the consular invoices had been sent; and that the plaintiff relied on defendant's statement in paying the drafts. The fact that the defendant's false representations may not have been the sole cause which induced plaintiff to pay the drafts is immaterial.

Appeal by the defendant, Banque Internationale de Commerce, from a judgment of the Supreme Court in favor of the plaintiff,

entered in the office of the clerk of the county of New York on the 16th day of March, 1925, upon the verdict of a jury, except as to that part of the judgment in favor of the defendant bank on the first and second causes of action, entered upon the verdict of the jury by direction of the court, and also from an order entered in said clerk's office on the same day denying said defendant's motion for a new trial made upon the minutes, except that portion denying plaintiff's motion to set aside the directed verdict on the first and second causes of action.

Appeal by the plaintiff, Archibald & Lewis Company, from that part of the said judgment whereby it was adjudged that the first and second causes of action set forth in the complaint be and the same hereby are dismissed on the merits, and plaintiff brings up for review on such appeal that part of the said order denying plaintiff's motion for a direction of a verdict in favor of the plaintiff on the first and second causes of action set forth in the complaint and further denying plaintiff's motion to set aside the verdict directed in favor of the defendants on the first and second causes of action and for a new trial.

The defendant Vemian was never served nor did he appear in the action. The facts are practically undisputed, many are stipulated.

*John Kirkland Clark* [*Ganson J. Baldwin* with him on the brief], for the plaintiff.

*Nathaniel S. Corwin,* for the defendant Banque Internationale de Commerce.

BURR, J. The plaintiff, Archibald & Lewis Company, a New York corporation, after correspondence covering several months, purchased from Georges Vemian of Varna, Bulgaria, certain merchandise; two drafts covering the purchase price of said merchandise were drawn by the seller, Georges Vemian, at Varna, Bulgaria, on the buyer, the plaintiff Archibald & Lewis Company in New York, to the order of the defendant Banque Internationale de Commerce of Paris.

The drafts were sent by Vemian at Varna, Bulgaria, to the Banque Internationale de Commerce in Paris, to forward to their correspondent in New York, for collection, with instructions to advise him when the amount was collected. Upon the receipt in Paris of the two drafts, the said drafts were then indorsed by the defendant Banque Internationale de Commerce for collection to the Banca Commerciale Italiana, and forwarded by the Banque Internationale de Commerce in Paris to the Banca Commerciale

Italiana Agency in New York, with instructions to collect the same, and upon payment to advise them by cable of their payment.

The drafts were accompanied by three bills of lading, insurance papers and other documents.

The drafts and accompanying documents were presented to the plaintiff at its place of business in New York on or about October 13, 1922, and at the time of the said presentment to the plaintiff, William Archibald, an officer of the company, refused to accept the drafts on the ground that the consular invoices were missing.

This fact, that payment was refused because the consular invoices were missing, was communicated by the Banca Commerciale Italiana Agency in New York to the Banque Internationale de Commerce, Paris, and the Banque Internationale de Commerce forwarded this information to Georges Vemian at Varna, Bulgaria, the seller of the goods, who in response on October 21, 1922, cabled to the Banque Internationale de Commerce the following: " Consular invoices addressed directly drawee represent drafts refusing have returned at once without expenses."

The defendant Banque Internationale de Commerce then cabled on October 21, 1922, to the Banca Commerciale Italiana: " Credit 328 consular invoices addressed directly drawee represent drafts if unpaid return without expenses."

The Banca Commerciale Italiana informed the plaintiff of this cablegram, and subsequently on November 2, 1922, the drafts were accepted and paid.

On November third the Banca Commerciale Italiana cabled the Banque Internationale de Commerce of the collection and credited the Banque Internationale de Commerce with the amount of said drafts, and on November fourth the Banque Internationale de Commerce informed Georges Vemian, the seller of the goods, of this fact, crediting his account with the amount, and on November eighth the Banque Internationale de Commerce paid by draft on Westminster & Parr's Bank, Ltd., London, the proceeds of the collection of said drafts to the seller, Georges Vemian.

The bills of lading which accompanied the said drafts, and which had been delivered to the plaintiff on its acceptance of the drafts, were forged, and no goods were ever shipped, and no consular invoices were ever sent by the seller, Georges Vemian, but of these facts, the defendant Banque Internationale de Commerce had no knowledge, and believed the said bills of lading to be regular, and that the goods therein described had been shipped, and believed the information they had received from Vemian that the said consular invoices had been sent direct by him was true.

The office and business of Georges Vemian was at Varna, Bulgaria.

The defendant Banque Internationale de Commerce had no office, agent or representative in Bulgaria, and for a long period prior to October 1, 1922, the defendant Banque Internationale de Commerce had dealings with Georges Vemian, and all of the said dealings had been found to be regular, straightforward and correct, and Vemian had always fulfilled all of his obligations and commitments.   There is no dispute as to the genuineness of the drafts.

The letter accompanying the two drafts sent by Vemian to the defendant contained instructions to the defendant to collect the drafts and credit the amount to Vemian's account and upon payment of the drafts to deliver the bills of lading.   The drafts were drawn payable to the order of the defendant bank.   The defendant bank indorsed the drafts " Value for collection " to its correspondent, the Italian Bank of New York, and also indorsed the bills of lading to the Italian Bank, and forwarded these to the Italian Bank with a letter stating that they were remitting the drafts for collection by order and for account of Mr. Georges Vemian of Varna, and directing the Italian Bank to deliver the bills of lading against payment of the drafts.   The Italian Bank in New York indorsed the bills of lading with their restrictive indorsement to plaintiff, Archibald & Lewis Company, and presented the drafts for acceptance.   The drafts were accepted by plaintiff the afternoon of November 2, 1922, payable at the Irving National Bank, and the same afternoon were paid, at which time the bills of lading were delivered.   The Italian Bank remitted the funds to the defendant bank and the defendant bank paid them to Vemian.   Neither the defendant bank nor the Italian Bank paid or received any value for the drafts or bills of lading. No notice that the bills of lading afterwards proved to be forgeries and that no goods were ever shipped was given to the defendant bank or demand made upon the defendant bank until after it had paid the proceeds of the drafts to its principal Vemian.

Upon the foregoing facts it is the plaintiff's contention: 1. That the general or unqualified indorsement of the forged bills of lading by the defendant bank to its agent, the Italian Bank, which bills of lading were delivered by the latter to the plaintiff, constituted a warranty on the part of the defendant bank of the genuineness of the bills of lading to plaintiff under section 221 of the Personal Property Law of New York and section 34 of the Federal Bills of Lading Act.   2. That the cablegram sent by defendant bank stating the consular invoices had been sent direct to plaintiff, and on which cablegram plaintiff relied, was false and constituted a fraud upon the plaintiff for which defendant bank is liable.

The claims as to the defendant's liability by reason of its indorse-

# 326 ARCHIBALD & LEWIS CO. v. BANQUE INTERNAT. DE COMMERCE.

ment of the bills of lading constitute the first and second causes of action for the recovery of the amount of the two drafts paid by plaintiff.

The claim as to defendant's liability by reason of the alleged false cablegram sent by defendant and relied upon by plaintiff representing that the consular invoices had been forwarded to plaintiff direct constitute the third and fourth causes of action for the recovery of the amount of the two drafts paid by plaintiff.

The third and fourth causes of action plaintiff was allowed to add to its complaint by amendment at the trial.

On the trial, both sides having moved for a direction, a verdict was directed in favor of the defendant dismissing the first and second causes of action. The claims set forth in the third and fourth causes of action were submitted to the jury and a verdict rendered n favor of plaintiff for the amount of the drafts.

1. As to the claim that the defendant bank is liable by reason of its general or unqualified indorsement of the bills of lading.

The defendant bank's indorsement on the bills of lading translated from the French it is conceded reads as follows: " Deliver to the order of Banca Commerciale Italiana Paris the 2nd day of October, 1922." (Two illegible signatures.) The indorsement of Banca Commerciale Italiana on the bills of lading reads as follows: " Deliver to the order of Archibald & Lewis Co., without warranty or responsibility by us of the genuineness, regularity or validity of this document, or of the character, quantity, quality, condition or delivery of merchandise covered thereby and without recourse against us in any event. Banca Commerciale Italiana. Agency in New York." (Two illegible signatures described as " Agents.")

The plaintiff contends that the defendant bank is liable under its general or unqualified indorsement of the bills of lading by reason of the provisions of the New York Bills of Lading Act (Laws of 1911, chap. 248, adding to Pers. Prop. Law, § 221), which was enacted June 6, 1911, and took effect September 1, 1911, and of the Federal Bills of Lading Act (39 U. S. Stat. at Large, 538, chap. 415, § 1 *et seq.*, particularly Id. 543, chap. 415, § 34, approved August 29, 1916; U. S. Comp. Stat. § 8604aaa *et seq.*, particularly Id. § 8604qq; Barnes Federal Code, § 7978 *et seq.*, particularly Id. § 8011), relating to bills of lading in interstate and foreign commerce, which became effective January 1, 1917, the terms of both of which are substantially similar.

Section 1 of the Federal Bills of Lading Act provides:

" Bills of lading. Issued in interstate and foreign commerce governed hereby. * * * Bills of lading issued by any common carrier for the transportation of goods in any Territory of the

United States, or the District of Columbia, or from a place in a State to a place in a foreign country, or from a place in one State to a place in another State, or from a place in one State to a place in the same State through another State or foreign country, shall be governed by this Act."

As the bills of lading in question originated in a foreign country this act has no application to them. Nor does section 221 of the Personal Property Law apply.

Section 221 of the Personal Property Law is as follows:

" § 221. Warranties on sale of bill. A person who negotiates or transfers for value a bill by indorsement or delivery, including one who assigns for value a claim secured by a bill, unless a contrary intention appears, warrants:

" (a) That the bill is genuine,

" (b) That he has a legal right to transfer it,

" (c) That he has knowledge of no fact which would impair the validity or worth of the bill, and

" (d) That he has a right to transfer the title to the goods, and that the goods are merchantable or fit for a particular purpose whenever such warranties would have been implied, if the contract of the parties had been to transfer without a bill the goods represented thereby.

" In the case of an assignment of a claim secured by a bill, the liability of the assignor shall not exceed the amount of the claim."

This section does not apply to the transaction here involved. That is apparent from the very title of this section, " Warranties on sale of bill," as there was no sale of the bills of lading by the defendant bank to the plaintiff. The section specifically provides that " a person who negotiates or transfers for value a bill by indorsement or delivery " warrants that the bill is genuine, etc. The defendant bank never paid any value for the bill of lading, and received no value for it. It was acting merely as agent for the drawer of the drafts, Vemian, to collect payment of the drafts from the plaintiff and to transfer the bills of lading to the plaintiff. It was never the owner or even the pledgee of the drafts or the bills of lading, or of the money received on payment of the drafts. Vemian was the owner of the drafts and bills of lading until they were delivered to the plaintiff, and the title to the money paid by the plaintiff to the bank vested in Vemian as soon as received by the bank. (*Bank of America* v. *Waydell,* 187 N. Y. 115; *Matter of Bank of Cuba in N. Y.,* 198 App. Div. 733; *National Park Bank* v. *Seaboard Bank,* 114 N. Y. 28, 34.) The bank, therefore, was not a transferor " for value " of the bills of lading to the plaintiff, and the section, by its terms, does not apply.

Section 221 makes no difference between the indorsement of a bill of lading and the transfer of a bill of lading by delivery. The warranty is the same, whether the bill of lading is transferred by indorsement or by delivery. The indorsement gives the transferee no greater rights than if the bill of lading had been merely delivered.

In *Shaw* v. *Railroad Co.* (101 U. S. 557) the court said: " Bills of lading are regarded as so much cotton, grain, iron, or other articles of merchandise. The merchandise is very often sold or pledged by the transfer of the bills which cover it. They are, in commerce, a very different thing from bills of exchange and promissory notes, answering a different purpose and performing different functions. It cannot be, therefore, that the statute which made them negotiable by indorsement and delivery, or negotiable in the same manner as bills of exchange and promissory notes are negotiable, intended to change totally their character, put them in all respects on the footing of instruments which are the representatives of money and charge the negotiation of them with all the consequences which usually attend or follow the negotiation of bills and notes. Some of these consequences would be very strange if not impossible. Such as the liability of indorsers, the duty of demand *ad diem*, notice of non-delivery by the carrier, &c., or the loss of the owner's property by the fraudulent assignment of a thief. If these were intended, surely the statute would have said something more than merely make them negotiable by indorsement. No statute is to be construed as altering the common law, farther than its words impart. It is not to be construed as making any innovation upon the common law which it does not fairly express. Especially is so great an innovation as would be placing bills of lading on the same footing in all respects with bills of exchange not to be inferred from words that can be fully satisfied without it."

This has now been enacted into the Personal Property Law of New York by section 222 thereof (as added by Laws of 1911, chap. 248), which reads as follows:

" § 222. Indorser not a guarantor. The indorsement of a bill shall not make the indorser liable for any failure on the part of the carrier or previous indorsers of the bill to fulfill their respective obligations."

The defendant bank acquired no title to the drafts or bills of lading or to the proceeds of the drafts when received. It was merely bailee thereof for the drawer of the drafts.

In *Matter of Bank of Cuba in N. Y.* (198 App. Div. 733) this court said: " There can be no doubt that neither the title to the draft nor to the proceeds thereof ever vested in the bank and that both remained in the appellant, for the rule is well settled

that in such case the relation between the party delivering the draft to be forwarded for acceptance and for collection and the bank to which it is delivered is that of bailee and bailor and not of debtor and creditor, and that the title to the draft and to the proceeds of the collection, although merged with the funds of the bank, remain in the appellant." (See cases cited.)

In *Bank of America* v. *Waydell* (187 N. Y. 115) the court said: " An indorsement in blank accompanied by a letter stating that the enclosed draft was for ' collection and credit,' must be read together, and the effect is to make the indorsement restrictive and the same in character as if the contents of the letter had been incorporated in the indorsement."

Where payment has been made to an agent for collection, who pays it over to his principal before any demand is made or any mistake discovered, the agent cannot be compelled to repay the same. (*National Park Bank* v. *Seaboard Bank*, 114 N. Y. 28; *LaFarge* v. *Kneeland*, 7 Cow. 456, 460; *Mowatt* v. *McLelan*, 1 Wend. 173; *Herrick* v. *Gallagher*, 60 Barb. 566.)

Had the defendant bank discounted the drafts and, therefore, held the bills of lading as security for their payment, even in that event it would be expressly relieved of liability to the drawee by section 223 of the Personal Property Law (as added by Laws of 1911, chap. 248), which was adopted from and is identical with section 37 of the Uniform Bills of Lading Act, and is the same as section 36 of the Federal Bills of Lading Act (39 U. S. Stat. at Large, 544). This section reads as follows:

"§ 223. No warranty implied from accepting payment of a debt. A mortgagee or pledgee, or other holder of a bill for security who in good faith demands or receives payment of the debt for which such bill is security, whether from a party to a draft drawn for such debt or from any other person, shall not be deemed by so doing to represent or to warrant the genuineness of such bill or the quantity or quality of the goods therein described."

This section is a codification of the English and Federal decisions referred to in the Commissioners' note to section 37 of the Uniform Bills of Lading Act which is identical with section 223 of the New York law, to the effect that the holder of a bill of exchange, having a forged bill of lading as security, is not liable to refund payment of the draft if he receives payment from the drawee. (See 4 Greene's Uniform Laws Annotated, 61.)

This was also the law in New York prior to the enactment of this section. (See *Springs* v. *Hanover National Bank*, 209 N. Y. 224, in which the case of *Goetz* v. *Bank of Kansas City*, 119 U. S. 551, cited in the Commissioners' note, *supra,* was relied upon and

followed.)   It was held in the *Springs* case that a bank which had discounted a genuine draft and collected the same against delivery of a forged bill of lading is not liable to the drawee for the amount of the draft.   The court quoted with approval from the opinion in the *Goetz* case, as follows (p. 236): " A bank in discounting commercial paper does not guarantee the genuineness of a document attached to it as collateral security.   Bills of lading attached to drafts drawn, as in the present case, are merely security for the payment of the drafts."

In *Hubbard Bros. & Co.* v. *Southern Pacific Co.* (256 Fed. 761), decided in 1919, the general rule was followed and was stated as follows (p. 766): " The indorsement of an ordinary draft for collection does not make the indorser a guarantor to the drawee of the genuineness of the bills of lading attached, nor of the quantity or quality of the commodity shipped."

Professor Chaffe (in 32 Harv. Law Rev. 561) says: " It is settled law in cases where the draft makes no reference to the collateral that the loss falls on the drawee (or his principal), if the draft has been accepted or paid.   Money paid cannot be recovered back, and the acceptor can get no relief on account of the mistake.   The holder who presented the instrument is not liable as a warrantor of its genuineness or on any other ground.   There clearly is no warranty, for he does not sell the bill of lading to the drawee, but merely relinquishes his lien in exchange for the new security afforded by the acceptance."

The indorsement of the bills of lading by the defendant bank did not render it liable to the plaintiff, and the defendant was accordingly entitled to the dismissal of the complaint as to the first and second causes of action.

2. As to the claim of defendant's liability based on the alleged false cablegram sent by defendant bank stating that the consular invoices had been sent direct to the drawee (plaintiff).

The complaint alleges: " The representations so made by said defendant Banque Internationale de Commerce to said plaintiff were made without knowledge of the fact as to whether or not said consular invoices had been so mailed, and said representations by said defendant were wilfully and recklessly made with intent to induce the plaintiff to act thereon and to make such payment as aforesaid, and in reckless disregard of the facts, and constituted a fraud upon the plaintiff, as, in fact, no consular invoices had ever been issued, and no knowledge of their issuance was, therefore, possessed by said defendant   *   *   *   and said representations that consular invoices had been issued and mailed were false and untrue in fact, and said defendant Banque Internationale de Com-

merce knew that it had no knowledge as to the truth or falsity of said statements."

Plaintiff having repeatedly refused to pay the drafts because of the absence of the consular invoices which plaintiff claimed were necessary and should have accompanied the drafts, the Italian Bank, agent of the defendant bank, cabled defendant bank at Paris on or about October 17, 1922: " Your remittance number 3285-3286-$10,575, $5,150 unpaid drawee claims consular invoice." To this cable the defendant bank sent to the Italian Bank, its agent at New York, on or about October 21, 1922, a cablegram as follows: " Credit 328 consular invoices addressed directly drawee represent drafts if unpaid return without expenses."

The Italian Bank communicated the contents of this cablegram to plaintiff as the definite assurance of the defendant bank that the consular invoices had been mailed to plaintiff.

It is conceded that the cable was sent on information received from the shipper, Georges Vemian, and that the defendant Banque Internationale de Commerce believed the same to be true.

It is further conceded by stipulation that for a long period prior to October 1, 1922, when the foregoing transaction took place, the defendant Banque Internationale de Commerce had had dealings with Georges Vemian, and all of said dealings had been found to be regular, straightforward and correct, and that the said Georges Vemian had always fulfilled all of his obligations and commitments.

The defendant might have protected itself by cabling the truth in its cable and inserted the words " Shipper states " before saying " consular invoices addressed directly drawee." It did not do so. On the contrary, it sent a message the contents of which were repeated by its agent, the Italian Bank, to plaintiff which reasonably led the plaintiff to believe the defendant bank itself had the consular invoices and had mailed them directly to the plaintiff, or that the defendant bank had personal knowledge of the mailing of the consular invoices.

That knowledge it did not have. It was admittedly relying on the information received from Vemian. The statement in the cablegram was made to induce plaintiff to pay these drafts. Plaintiff relied upon these representations and believing the consular invoices had been sent direct paid the money. Such representation was entirely false and untrue. As it turned out, the bills of lading were forged, no goods were shipped, no consular invoices were ever sent.

It is now well settled that where a false representation is made consisting of a statement by the person making the representation

as of a fact of his positive knowledge when in fact he had no positive knowledge and knew he had not, such reckless statement constitutes a sufficient basis for a recovery for false representations as it is a fraud to affirm positive knowledge of that which one does not positively know.

As was said in *Arnold* v. *Richardson* (74 App. Div. 581, 584): " The statement was unqualified. It purported to state a matter which was within the knowledge of the officers of the corporation, to wit, the exact amount of its indebtedness. It is self-evident that a correct statement of the indebtedness of the corporation was material and essential to enable any person dealing with it to form a correct judgment as to its financial condition. Under such circumstances it is entirely immaterial whether the officers of Daniel Green & Co. knew or did not know that the outstanding promissory notes made by it, and aggregating nearly half a million dollars, were obligations against the corporation. In the statement the corporation's secretary and treasurer asserted that the bills payable of the corporation only amounted to $74,482.22, when in truth and in fact they amounted to $453,824.82. He affirmed positive knowledge of that which he did not know positively. He asserted the existence of a material fact to his personal knowledge, when, according to the findings of the referee, he did not know whether it existed or not. When a statement so made turns out to be untrue, and is relied upon to the damage of another, it constitutes actionable fraud, and whether the statement so made was believed by the party making it to be true or not is entirely immaterial.

" The rule is stated in *Kountze* v. *Kennedy* (147 N. Y. 124), as follows: ' One who falsely asserts a material fact, susceptible of accurate knowledge, to be true of his own knowledge, and thereby induces another to act upon the fact represented to his prejudice, commits a fraud which will sustain an action for deceit.'

" In *Hadcock* v. *Osmer* (153 N. Y. 608), the court said: ' But while there must be a furtive intent, it may exist when one asserts a thing to be true which he does not know to be true, as it is a fraud to affirm positive knowledge of that which one does not positively know. Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not, and it is actually untrue, he is guilty of falsehood even if he believes it to be true, and if the statement is thus made with the intention that it shall be acted upon by another, who does so act upon it to his injury, the result is actionable fraud.'

" We think the facts of the case at bar bring it precisely within

the rule thus stated, and that Daniel Green & Co. having obtained possession of plaintiff's property under those circumstances the title to it did not pass, and that the plaintiff was entitled to recover possession of the same or its value in this action."

In *Taylor* v. *Commercial Bank* (68 App. Div. 458, 462) the court stated the rule as follows: " At all events, according to the plaintiff's testimony, he made a material representation assuming to have knowledge of the facts, and, therefore, the liability is precisely the same as if made with knowledge of its falsity."

In *Churchill* v. *St. George Development Co.* (174 App. Div. 1, 6) the rule is stated: " Neither may any defendant escape responsibility through plea of lack of personal knowledge of the truth of declarations made by him.   The makers of these representations, whether by prospectus or orally, either knew or did not know the actual facts with reference to this tract of land.   If they did know and misrepresented, then they are clearly liable for such fraud.   If they did not know its condition, then they knew of such lack of knowledge on their own part.   Then their statement made as if from personal knowledge is equally fraudulent as though intentionally falsely made. If damage ensues from either of these two situations the person making representations must be held to responsibility.   (*Rothschild* v. *Mack*, 115 N. Y. 1; *Kountze* v. *Kennedy*, 147 id. 124; *Hadcock* v. *Osmer*, 153 id. 604.) "

The evidence is uncontradicted that without this representation plaintiff would not have paid the drafts.   It is true that in taking up the drafts plaintiff relied upon the indorsement of the defendant on the bills of lading and that plaintiff was also moved by the profit the merchandise bid fair to realize.   The fact that the defendant's false representations may not have been the sole inducing cause is immaterial.   (*Laska* v. *Harris*, 215 N. Y. 554, 557; *Kley* v. *Healy*, 127 id. 555, 561; *Strong* v. *Strong*, 102 id. 69, 74, 75.)

The defendant's own witness, the manager of the Italian Bank, testified that he knew on or about the thirteenth day of October that there was a refusal to pay these drafts because the shipping papers were incomplete; that he himself investigated these papers and found them to be incomplete; there was no consular invoice, and from his experience in handling such matters in the past he knew that a consular invoice was one of the customary and necessary papers, and the evidence in the case clearly shows that if the assurance had not been given by the bank that these missing papers had been forwarded the drafts would not have been paid.

The representation, therefore, was as to a material fact.   The representation was false.   The defendant had no knowledge whatever as to the existence of the consular invoices.   Such a repre-

sentation so made by the bank as shown by the evidence to induce the payment of these drafts and which representation was relied upon by the plaintiff in making the payment gave plaintiff a right of action, and we are of the opinion that the verdict in favor of plaintiff was fully sustained by the evidence.

The judgment and order appealed from should be affirmed, without costs.

CLARKE, P. J., MERRELL, FINCH and MARTIN, JJ., concur.

Judgment affirmed, without costs.