OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 UCC 7-507 provides that the transferor of a document of title warrants the genuineness of the document except as provided in UCC 7-508, which exempts from this duty a mere “intermediary.” Defendant bank, which unknowingly accepted a fraudulent bill of lading as security for a loan and, upon satisfaction of the loan, transferred the document to plaintiff bank, claims that it was entitled to the exemption provided by UCC 7-508. We agree with the Appellate Division that, in the transaction at issue, defendant was an intermediary entitled to the UCC 7-508 exemption and therefore affirm dismissal of the complaint.
 

 In September 1991, defendant Standard Chartered Bank established a $5 million line of credit in favor of its customer, Red Rock Commodities, Ltd., for use in purchasing steel billets for export to Israel. At Red Rock’s request, on December 19, 1991, Standard issued an irrevocable letter of credit in the amount of $2,107,000 against Red Rock’s account in favor of
 
 *483
 
 Narahami, Inc., a Swiss steel merchant, for purchase of the billets.
 

 To obtain payment under the terms of the letter of credit, on January 6, 1992 Narahami presented Standard with a negotiable bill of lading issued December 21, 1991 for the shipment of 10,520.4 metric tons of steel billets "clean on board” the motor vessel
 
 Szombierki
 
 in Szczecin, Poland, bound for Ashdod, Israel. Standard made payment to Narahami and debited Red Rock’s account $2,261,886, apparently intending to hold the bill of lading until redeemed by the purchaser, Ram Metals and Building Industries, Inc., by payment in full upon arrival of the shipment in Israel.
 

 When several months later Ram Metals had not made payment to Standard, Red Rock sought to free its line of credit. At Red Rock’s urging, Ram Metals borrowed $2.5 million from the Park Avenue Bank, N. A., to pay the debt owed to Standard, in exchange for a promissory note payable February 26, 1993. That loan was backed by a standby letter of credit in the amount of $2.5 million issued by plaintiff T.C. Ziraat Bankasi (Ziraat) in favor of Park Avenue Bank. By its terms, the standby letter of credit was payable on or after March 6, 1993 upon presentation of a sight draft drawn on Ziraat accompanied by a statement by Park Avenue Bank that Ram Metals had defaulted on the promissory note. On June 30, 1992, Park Avenue Bank transferred the proceeds of the loan to Standard in satisfaction of Red Rock’s debt.
 

 The next day, at Red Rock’s request, Standard endorsed and transferred the bill of lading to Ziraat to collateralize the standby letter of credit. Standard and Ziraat had a total of three communications. The first was a brief telephone conversation between the banks’ vice-presidents on June 24 regarding Red Rock’s need for credit. The other two were by letter— one dated June 30, 1992 reciting in language suggested by Red Rock that "We undertake that upon receipt of these funds from Park Avenue Bank, we will endorse the original Bills of Lading to T.C. Ziraat Bankasi and deliver said Bills of Lading to your Bank,” and the other actually transmitting the bill on July 1.
 

 By December 1992, Red Rock had disclosed to Ziraat that the bill of lading was fraudulent — the steel billets never existed, and the
 
 Szombierki
 
 was not even in port at Szczecin on the date of the bill’s issuance. Standard was apparently unaware of the fraud. In January 1993, Ram Metals was placed in liquidation in Israel.
 

 
 *484
 
 Ziraat commenced this action against Standard for breach of warranty in transferring the fraudulent bill of lading, and Standard asserted as a defense that it was a mere intermediary, not responsible for the genuineness of the document. Supreme Court granted Standard summary judgment dismissing the complaint, the Appellate Division affirmed for the reasons stated in the comprehensive opinion of Justice Myriam Altman, and we granted leave to appeal.
 

 During the pendency of the State court proceedings, on March 8, 1993, Park Avenue Bank presented Ziraat with the required sight draft and statement under the standby letter of credit. After Ziraat disclaimed liability and refused payment, Park Avenue Bank commenced suit in the United States District Court for the Southern District of New York to compel Ziraat to honor the standby letter of credit
 
 (see, Park Ave. Bank v Ziraat Bankasi,
 
 1994 US Dist LEXIS 3433, 1994 WL 97039 [Mar. 24, 1994, Keenan, J., 93 Civ 1483]). That action is pending.
 

 I.
 

 Lacking a definition of "intermediary” in the Uniform Commercial Code, we look to the rationale underlying UCC 7-507 and 7-508, in which the term appears
 
 (see,
 
 UCC 1-102; Note,
 
 How Appellate Opinions Should Justify Decisions Made Under the U.C.C.,
 
 29 Stan L Rev 1245 [1977]). UCC 7-507 provides:
 

 "Where a person negotiates or transfers a document of title for value otherwise than as a mere intermediary under the next following section, then unless otherwise agreed he warrants to his immediate purchaser only in addition to any warranty made in selling the goods "(a) that the document is genuine; and "(b) that he has no knowledge of any fact which would impair its validity or worth; and "(c) that his negotiation or transfer is rightful and fully effective with respect to the title to the document and the goods it represents.”
 

 A "mere intermediary” warrants only its own good faith and authority to transfer the document, as set forth in UCC 7-508:
 

 
 *485
 
 "A collecting bank or other intermediary known to be entrusted with documents on behalf of another or with collection of a draft or other claim against delivery of documents warrants by such delivery of the documents only its own good faith and authority. This rule applies even though the intermediary has purchased or made advances against the claim or draft to be collected.”
 

 A collecting bank — which Standard concedes it was not — is "any bank handling the item for collection except the payor bank” (UCC 4-105 [d]), in other words, a bank that transfers an item between principals. An "other intermediary” is necessarily broader but still, like a collecting bank, is essentially a go-between with no real stake in the underlying transaction, which is the common understanding of the common word "intermediary.”
 

 UCC 7-507 warranties are owed to the "immediate
 
 purchaser
 
 only” of the document of title, signalling that the section contemplates a transaction in the nature of a sale. Indeed, the section goes on to provide that the warranties as to the document are in addition to "any warranty made in selling the goods.” The drafters noted that the warranties described in UCC 7-507 "derive from the contract of sale and not from the transfer of the documents” (UCC 7-507, Comment 1). The section 7-508 exemption, by contrast, applies to "delivery of documents” entrusted to the transferor "on behalf of another.”
 

 Thus, the purpose underlying UCC 7-508’s exemption appears to be protection of the reasonable commercial expectation of a transferor who merely forwards — and does not itself sell — a document of title. While a seller may be held accountable for the quality of what it sells, one who merely transfers on behalf of another — an intermediary — is generally not expected to know or represent its quality. The UCC 7-507 warranty is therefore properly imposed in transactions more in the nature of a sale than transfer of documents on behalf of another.
 

 This reading is supported as well by the history of the sections, which may be traced back to the Personal Property Law and the common law before it. Personal Property Law former § 221, with which UCC 7-507 is "generally in accord”
 
 (see,
 
 UCC 7-507, New York Annotations), imposed a warranty of genuineness only upon
 
 sale
 
 of a bill of lading. Personal Property Law former § 223 — the predecessor of UCC 7-508
 
 *486
 

 (see,
 
 UCC 7-508, New York Annotations) — exempted transactions in which the pledgee of the bill of lading transferred the bill upon payment of the underlying debt. Applying those provisions to facts similar to this case, the Appellate Division concluded in
 
 Archibald & Lewis Co. v Banque Internationale de Commerce
 
 (216 App Div 322, 327) that endorsement and transfer of a fraudulent bill of lading upon satisfaction of a debt was not a sale subject to the warranty of genuineness
 
 (see also, Springs v Hanover Natl. Bank,
 
 209 NY 224 [transferor of fraudulent bill of lading for collection of accompanying draft not liable to transferee at common law]).
 

 II.
 

 The trial court and Appellate Division correctly applied these principles to the facts at hand. Had Standard, upon satisfaction of the debt, simply transferred the collateral to Red Rock, plainly no warranty of genuineness would have arisen. No different result should follow on Standard’s transfer of the collateral, for Red Rock’s benefit and at its direction, to Ziraat.
 

 When Standard accepted the bill of lading as security for its customer’s debt, it presumably did its own evaluation of the collateral, assuming the risk that the bill of lading might be fraudulent
 
 (see,
 
 2 White and Summers, Uniform Commercial Code § 22-5, at 235 [Practitioner’s 3d ed] [pledgee of document of title bears risk that document is fraudulent]). Upon satisfaction of the debt and relinquishment of the collateral, Standard no longer bore that risk. Having sought possession of the bill of lading as security for its standby letter of credit — generally collateralized only at the issuer’s request — Ziraat should not be permitted to rely on Standard’s prior acceptance of the document as a warranty of its genuineness. Standard may, for its own business reasons, have been satisfied to accept the collateral offered by its customer, but that should not relieve Ziraat of the responsibility to conduct its own investigation.
 

 Two additional points bear mention. First, we reject Ziraat’s claim that it was a purchaser of the bill entitled to a warranty of genuineness because Standard received value— repayment of its loan — in the transaction. Standard merely relinquished its collateral upon satisfaction of the Red Rock loan, a transaction that cannot properly be deemed a sale in these circumstances
 
 (see, Archibald & Lewis Co., supra,
 
 at 327;
 
 First Trust & Sav. Bank v Fidelity-Philadelphia Trust Co.,
 
 214 F2d 320, 323,
 
 cert denied
 
 348 US 856).
 

 
 *487
 
 Second, we likewise reject Ziraat’s contention that Standard’s June 30, 1992 letter — reflecting Standard’s agreement to deliver the bill of lading to Ziraat upon satisfaction of the underlying debt — conferred a warranty of genuineness. Standard sent the letter at Red Rock’s request "as per the exact enclosed draft” provided by Red Rock. By its terms, the letter expressed Standard’s obligation — owed to Red Rock — to forward the document. Nothing in the letter alters the nature of the transfer or Standard’s role as an intermediary. Nor by endorsing the bill of lading did Standard incur any obligation to Ziraat
 
 (see,
 
 UCC 7-505).
 

 III.
 

 Finally, we find significant that our holding is consistent with the express provisions of the Federal Bills of Lading Act (FBLA) (49 USC § 80101
 
 et seq.),
 
 a statute that would have controlled here had the bill of lading not reflected shipment of goods entirely outside the United States
 
 (see,
 
 49 USC § 80102; UCC 7-103).
 

 Like UCC 7-507, the FBLA imposes a warranty of genuineness on the transferor of a bill of lading
 
 (see,
 
 49 USC § 80107 [a]). However, "[a] person holding a bill of lading as security for a debt and in good faith demanding or receiving payment of the debt from another person does not warrant by the demand or receipt — (1) the genuineness of the bill; or (2) the quantity or quality of the goods described in the bill” (49 USC § 80107 [b]). But for the fortuity of the situs of the shipment, Standard — a holder of the bill of lading as security for a debt —would under the Federal statute have been exempt from warranting the genuineness of the document. Uniformity of the law among the various jurisdictions is of course among the objectives of the Uniform Commercial Code (UCC 1-102 [2] [c]).
 

 As Ziraat does not dispute that Standard satisfied its warranties of good faith and authority as an intermediary under UCC 7-508, the complaint for breach of warranty was properly dismissed.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed, with costs.